## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GRANT BIERLY** | ) | |
| 8020 Elena Drive NE | ) | |
| Albuquerque, NM 87122 | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | **Civil Action No:_____** |
| v. | ) | |
| | ) | |
| **DEPARTMENT OF DEFENSE** | ) | |
| 1000 Defense Pentagon | ) | |
| Washington, District of Columbia  20301 | ) | |
| | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **DEFENSE COUNTERINTELLIGENCE** | ) | |
| **AND SECURITY AGENCY** | ) | |
| Building 600, 10th Street | ) | |
| Fort George G. Meade, MD 20755-5615 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **DEPARTMENT OF THE AIR FORCE** | ) | |
| 1690 Air Force Pentagon | ) | |
| Washington, DC  20330-1670 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **NATIONAL SECURITY AGENCY** | ) | |
| 9800 Savage Road, Suite 6272 | ) | |
| Fort George G. Meade, MD 20755-6000 | ) | |
| | ) | |
| Defendant(s) | ) | |
| | ) | |

<u>**As to each Defendant Serve:**</u>                     )
     Matthew M. Graves                         )
     United States Attorney for The            )
     District of Columbia                      )
     555 4th Street NW                         )
     Washington, DC  20530                     )
                                               )
     Attorney General of the                   )
     The United States                         )
     U.S. Department of Justice                )
     10th & Constitution Avenue, NW            )
     Washington, District of Columbia 22314 **)**
                                               )
           Defendants.                )

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

For his Complaint, Grant Bierly ("Mr. Bierly" or "Plaintiff"), by the undersigned counsel, states as follows:

The Plaintiff brings this action for declaratory, injunctive, and other appropriate relief against the Defendants for their role in the facts and circumstances surrounding the suspension of Mr. Bierly's security clearance and eventual forced resignation / constructive discharge of Mr. Bierly.

1.     Further, Plaintiff brings this action for injunctive relief and other appropriate relief and seeks the disclosure and release of agency records improperly withheld from the Plaintiff by the Defendant, the Department of Defense (DOD), and its subordinate agencies, the Defense Counterintelligence and Cybersecurity Agency (DCSA), the Department of the Air Force, and the National Security Agency (NSA), pursuant to the Privacy Act of 1974, 5 U.S.C. §552a <u>et seq.</u> and the Freedom of Information Act, 5 U.S.C. §552(a) <u>et seq.</u>

2.      While the Plaintiff acknowledges security clearance revocations and denials are generally reserved for the individual agencies' review, these claims satisfy the constitutional exceptions to the rule.  In this case, the Defendants' basis for their employment-related actions were based on violating Plaintiff's (1) First Amendment protections of free speech, (2) freedom of association; (3) freedom of assembly; and (4) due process.

3.      Additionally, actions and omissions by Defendants resulted in: (5) unequal and improper enforcement of SEAD 4, Security Clearance Guidelines; (6) committing Prohibited Personnel Personnel Practices; and (7) violating the Administrative Procedures Act by failing to follow their own rules and regulations.

## PARTIES

4.      Plaintiff is a United States citizen and a resident of New Mexico.

5.      The Defendants, DOD, Department of the Air Force, and DCSA, are "federal government agencies" within the meaning of (1) 28 U.S.C. §1346(b), 28 U.S.C. §2401(b), and 28 U.S.C. §2671, and (2) 5 U.S.C. §552(f)(1) and 5 U.S.C. §552a(a)(1).  The Defendants are in possession, custody, and control over documents and records about Plaintiff.

## JURISDICTION

6.      The Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(1), and 28 U.S.C. §1331.

7.      The Court has authority to issue declaratory and injunctive relief under 28 U.S.C § 1361.

8.      Venue is proper in this Court pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(5), and 28 U.S.C. §1391 (b) and (e).

9.     The Court has the authority to award attorneys' fees and expenses under 28 U.S.C. § 2412.

**LEGAL FRAMEWORK GOVERNING THE ADJUDICATION OF SECURITY CLEARANCE APPLICATIONS**

10.     Security clearance adjudications are controlled by Executive Orders wherein the President outlines the processes for security clearance adjudications. Each federal agency has to follow the guidance provided by the President or his or her designee.

11.     The most applicable and relevant Executive Order, and where this Court's analysis should begin, can be found in Executive Order 13467. Executive Order 13467 was one of many measures taken by the Bush administration post-9/11 aimed at aligning the nation's intelligence community. Executive Order 13467 is titled "Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information," issued June 30, 2008.[1] Executive Order 13467 is the beginning of the statutory framework because: (1) it is the most recent Executive Order on the issue; (2) it appoints the Director of National Intelligence as the Security Executive Agent who promulgates all rules, policies, guidelines, and oversight for all security clearances issued under Executive Authority; and (3) it explicitly directs the application of Executive Order 12968 as the framework by which to determine eligibility for access to classified information.

12.     Executive Order 13467 is critical for multiple reasons; for starters, one of the key goals of Executive Order 13467 can be found in Section 2.1, "*Aligned System.* (a) Investigations and adjudications of covered individuals who require a determination of suitability, eligibility for logical and physical access, eligibility to hold a sensitive position, eligibility for access to classified information, and, as appropriate, contractor employee fitness shall be aligned using

---

[1]     For reference, Executive Order 12968 was promulgated August 1995 and Directive 5220.6 was implemented January of 1992.

consistent standards to the extent possible."  The common theme of consistency, fairness, and equity is found throughout the Executive Order.

13.     Executive Order 13467 makes clear that it applies to "covered individuals," which would include military members.  See Executive Order 13467, Section 1.3(g).

14.     Section 2.4 within Executive Order 13467 goes on to state that the duties assigned to the Security Policy Board by Executive Order 12968 to consider, coordinate, and recommend policy directives for executive branch security policies, procedures, and practices are reassigned to the Security Executive Agent and that heads of agencies shall, among other tasks, "(ii) implement any policy or procedure developed pursuant to this order…"

15.     The key takeaways include: covered individuals are covered by Executive Order 13467; members of the military seeking security clearance are "covered individuals"; Executive Order 13467 appoints the ODNI as the Security Executive Agent; the Security Executive Agent is tasked with the responsibility listed in Section 2.3(c), detailed further below; and the Defendants fall squarely into the "agencies" contemplated by Executive Order 13467. Therefore, Defendants are required to follow guidelines and/or instructions by the ODNI/Security Executive Agent, and such guidelines and/or instructions would govern how Defendants adjudicate the Plaintiff's - a covered individual - eligibility to classified information.

16.     Furthermore, Executive Order 13467, Section 2.3 specifically calls for:

(c) The Director of National Intelligence shall serve as the Security Executive Agent. The Security Executive Agent:

    (i) shall direct the oversight of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position made by any agency;

    (ii) shall be responsible for developing uniform and consistent policies and procedures to ensure the effective, efficient, and timely completion of

investigations and adjudications relating to determinations of eligibility for access to classified information or eligibility to hold a sensitive position;

(iii) may issue guidelines and instructions to the heads of agencies to ensure appropriate uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position;

(iv) shall serve as the final authority to designate an agency or agencies to conduct investigations of persons who are proposed for access to classified information to ascertain whether such persons satisfy the criteria for obtaining and retaining access to classified information or eligibility to hold a sensitive position;

(v) shall serve as the final authority to designate an agency or agencies to determine eligibility for access to classified information in accordance with Executive Order 12968 of August 2, 1995;

(vi) shall ensure reciprocal recognition of eligibility for access to classified information among the agencies, including acting as the final authority to arbitrate and resolve disputes among the agencies involving the reciprocity of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position; and

(vii) may assign, in whole or in part, to the head of any agency (solely or jointly) any of the functions detailed in (i) through (vi), above, with the agency's exercise of such assigned functions to be subject to the Security Executive Agent's oversight and with such terms and conditions (including approval by the Security Executive Agent) as the Security Executive Agent determines appropriate.

17.     Therefore, Executive Order 13467 provides clear guidance for the Director of National Intelligence to control the security clearance process for contractors and military and federal government civilians.

18.     Section 2.3(iii) must be read in conjunction with Section 2.3(v), which specifically cites Executive Order 12968 as the Executive Order to determine eligibility for access to classified information.

19.     The most important section above is paragraph 2.3(iii), which provides the Director of National Intelligence with the instruction to issue guidelines and instructions to ensure the "uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position." The Security Executive Agent Directive (SEAD) 4 is such applicable guidance.

20.     Once Executive Order 13467 is established as the most recent and controlling Executive Order in the security clearance administrative process, then SEAD 4's applicability is clear. SEAD 4 defines "covered individual" within para. D.5.d. as, "Covered individuals are not limited to government employees and include all persons, not excluded under paragraphs (a), (b), or (c) of this definition, who require eligibility for access to classified information or eligibility to hold a sensitive position, including, but not limited to, contractors, subcontractors, licensees, certificate holders, grantees, experts, consultants, and government employees." This guidance is controlling because of Executive Order 13467, paragraph 2.3(iii).

21.     In June 2017, the Director of National Intelligence issued SEAD 4. Section "A" provides the authority for the issuance of the directive and provides the necessary roadmap to understanding this issue. SEAD 4 (A) states in pertinent part:

> The National Security Act of 1947, as amended; Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), as amended; Executive Order (EO) 10450, Security Requirements for Government Employment, as amended; EO 12968, Access to Classified Information as amended; EO 13467, Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information; EO 13549, Classified National Security Information Program for State, Local, Tribal and Private Sector Entities; Performance Accountability Council memorandum, Assignment of Functions Relating to Coverage of Contractor Employee Fitness in the Federal Investigative Standards, 6 December 2012; and other applicable provisions of law.

22.     It is important to note that SEAD 4 is listing the derivative authorities that provide ODNI with the responsibility of establishing the processes and procedures for security clearances. However, the section should technically start at Article II, Section 2 of the U.S. Constitution which makes the President, the Commander-in-Chief, and historically the Executive Branch's national security authority is derivative of - to include security clearances.

23.     SEAD 4 starts with The National Security Act of 1947 because that act is what formally codified the Executive Branch's authority in national security matters by providing for the creation and the development of different agencies under the Executive Branch that contributed to our nation's national security. IRTPA is the act that created the Director of National Intelligence and positioned this individual at the *top* of the intelligence community framework.

24.     Executive Order 10450 was issued by President Dwight D. Eisenhower in 1953, revoking Executive Order 9835, which created a "Loyalty Review Board." More importantly, the Order expanded the definitions and conditions used to make security risk determinations.

25.     The next Executive Order listed is Executive Order 12968. Executive Order 12968 provided additional guidance and efficiency for processing security clearances.

26.     With SEAD 4 being issued in June of 2017, it is the most recent in time and was promulgated at a higher level than the Department of Defense; any inconsistencies or incongruent procedures must be controlled by SEAD 4. SEAD 4 specifically provides in paragraph E(1) that "The National Security Adjudicative Guidelines in Appendix A shall be used by all authorized adjudicative agencies when rendering a determination for initial or continued eligibility for access to classified information or initial or continued eligibility to a hold a sensitive position."

27.     SEAD 4 also makes it abundantly clear to whom this guidance applies, where paragraph C. (Applicability) unequivocally states, "This Directive applies to any executive branch agency authorized or designated to conduct adjudications of covered individuals to determine eligibility for initial or continued access to classified national security information or eligibility to hold a sensitive position."

28.     This becomes critical when reading para. E.6 in SEAD 4, which reads, "When an adjudicative determination is made to deny or revoke eligibility for access to classified information or eligibility to hold a sensitive position, review proceedings, to the extent they are made available in Executive Order 12968, as amended, Part 5, shall be afforded to covered individuals at a minimum."

29.     Furthermore, Executive Order 12968, Part 5.2(2), specifically cites to FOIA and the Privacy Act and includes a timeline for producing records that is in line with FOIA's processing guidelines. In fact, 5 U.S.C. §552(a) et seq. provides the government with 20 days to respond to the request, and they can automatically request an additional 10 days because of exceptional circumstances. In short, the federal statute provides 30 days for the Government to respond, which is identical to the processing timelines laid out in Executive Order 12968, paragraph 5.2(2), which states that the documents would be provided within 30 days.

30.     The requirements afforded to a Subject have been memorialized in Executive Order 12968, Executive Order 13467, and SEAD 4.   In short, these requirements are seen as so basic to a fair process that a new right is not being created.  To think otherwise would mean that the entirety of Executive Order 12968, paragraph 5.2 would be creating a new "right" and that is not the case. Instead, it is the bare minimum to provide much-needed protections from the federal government before a final adjudication is rendered.

9

**Documents Applicable to Defendant DOD Supporting Executive Order 12968,
13467, and SEAD as Controlling Administrative Process**

31.     The Defendant DOD has documents where they interpret the guidance set forth in
the Executive Orders and provide their own interpretation.   That guidance can be found in DOD
Manual 5200.02, which explains the security clearance adjudication processes from the
Department of Defense's perspective.   DOD Manual 5200.02, revised October 29, 2020,
provides the minimum due process rights for *all* Subjects while simultaneously providing
separate paragraphs for DOD contractors and DOD civilian employees and military members.

32.     Paragraph 10.2 within DOD Manual 5200.02 is titled "Minimum Due Process
Requirements Applicable to All."   The paragraph goes on to explain that "no unfavorable
national security eligibility determination will be made without" the minimum due process
requirements set forth in Executive Order 12968.

33.     More specifically, paragraph 10.2(b)(2) calls for informing the individual of their
right to "Request the documents, records, and reports upon which the unfavorable national
security determination was made. Be granted an extension to the set timeline by the Component
PSAB if requested documents, records, and reports are not provided promptly."   The paragraph
continues by explaining the due process that is required for "all" Subjects.

34.     Paragraph 10.4 within DOD Manual 5200.02 is titled "Specific Procedures for
Civilian Employees and Military Members."   In 10.4(a)(3)(b), when discussing a Subject's
response to an SOR, it specifically states, "An extension of up to 30 calendar days from the
original deadline may be granted by the employing organization following submission of a
written request from the individual before the expiration of the original deadline.   Additional
extensions may only be granted by the adjudication facility when factors beyond the individual's

control (e.g., failure of the DoD CAF or the ISP to provide records in a timely manner) warrant granting additional time."

35.     Defendant DOD also provides a two page document with the issuance of SORs titled, "Instructions for Responding to a Statement of Reasons." Section "(a)" discusses how someone should prepare their response. Paragraph 3(a)(3) makes clear that a response to an SOR is not akin to an answer to a complaint and that a simple "admit" or "deny" response to an SOR would be inadequate and fail; therefore, being able to review documents relied upon in order to specifically refute allegations is absolutely critical:

> If you choose to respond [to an SOR], you should gather any documentation that supports your case. Your response and supporting documentation should be organized in the same order as the security concerns presented in the SOR. The documents that have the most impact will be those that ***refute, correct, extenuate, mitigate, or update*[emphasis added]** the unfavorable information presented in the SOR.   Examples of documentation include: copies of court records with details or dispositions of arrests and status of probation; transcripts of court testimony taken under oath; probation reports; copies of negotiated plea bargains; releases from judgment or wage attachment; statements of account or letters from creditors verifying the status of delinquent accounts; receipts or copies of canceled checks for payment on debts; certificates of completion for alcohol/drug abuse rehabilitation programs; etc. ***Mere statements such as "I didn't do it," "It wasn't my fault," or "I paid those bills" will not carry as much weight as supporting documentation* [emphasis added].** You may provide statements from co-workers, supervisors, your commander, friends, neighbors and others concerning your judgment, reliability and trustworthiness, and any other information that you think should be considered before a final decision is made. See **Exhibit A.**

36.     The SOR instructions provide details on how a Subject should write their response:

> The impact of your response will depend on the extent to which you can specifically refute, correct, extenuate, mitigates, or updates each item cited in the SOR.   If you believe that unfavorable information in the SOR presents an incomplete picture of the situation or circumstances, you should provide information that explains your case.   Bear in mind that the information you provide will be considered, but it also may be verified through additional investigation.

37.     A simple "Admit" or "Deny" would not comply with the guidance provided by DCSA. Furthermore, Paragraph 3(b)(4) specifically states, "The Guideline(s) aid in making a common sense decision based upon all that is known about a Subject's personal history."

38.     Finally, Paragraph 3(b)(5) provides the best evidence that a Subject *must* review the underlying documents that formed the basis of an SOR because it explicitly explains that a thorough SOR response can result in the reinstatement of a Subject's security clearance thereby negating the need for a personal appearance / hearing:

> (5) When you have completed your written response…When a final decision is made, you will be notified in writing, via your organization's SMO and/or SCI SMO. If the decision is favorable, your access eligibility will be granted or restored. If not, you may appeal the decision to higher authority [the Administrative Judge].

39.     Regardless whether one attempts to apply executive orders, SEAD 4, or agency specific directives and manuals, Defendants blatantly and willfully violated the due process rights and protections offered to Plaintiff in this process. These violations adversely affected the Plaintiff's ability to meaningfully reply to the SOR thereby eliminating any chance that the Plaintiff could satisfy the concerns without having to appear before an Administrative Judge.

## LEGAL FRAMEWORK FOR THE FOIA AND PRIVACY ACT

40.     The Freedom of Information Act (FOIA) provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, *shall* make the records promptly available to any person." 5 U.S.C. § 552(a)(3) (emphasis added). Thus, FOIA creates a presumption that records held by the federal government must be produced to members of the public upon request.

41.     Section 552(d) expressly provides that it "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section." Thus, records may only be withheld if they fall within one of Section 552's enumerated exemptions.

42.     Records may only be withheld or redacted under the Privacy Act if they fall within one of the enumerated exemptions in subsections (j) or (k), or an exemption under (d)(5).

43.     Lastly, upon receipt of an individual's request under FOIA and/or the Privacy Act, under (a)(6)(A)(i), the agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays)... whether to comply with such request and shall immediately notify the person."  The time limit may be extended by written notice to the person making the request if "unusual circumstances" apply, but such extension would not be authorized to exceed ten working days.

44.     The "unusual circumstances" permitted under (a)(6)(B) of the statute would include: (1) the need to search and collect documents from offices separate from the office processing the request; (2) the need to search and collect a large volume of records; or (3) the need to consult with another agency (or a separate subdivision of the same agency) having a substantial subject-matter interest in the request.

## FACTS

45.     Mr. Bierly is currently 25 years old.

46.     As part of a condition of employment with the Air Force United States Strategic Command, Joint Warfare Analysis Center (JWAC) located in Dahlgren, VA, as a PALACE Acquire Intern, Student Trainee, Mr. Bierly was required to maintain a Top Secret with Special Compartmented Information security clearance ("TS/SCI").

47.     As part of his overall background investigation, and to obtain the highest level of security clearance available to him, Mr. Bierly underwent a polygraph examination on February 25, 2020.[2]

48.     Mr.Bierly was 21 at the time of the polygraph.

49.     The addition of the "with polygraph" designation for the level of security clearance for Mr. Bierly's position was *not* required.

50.     At the conclusion of the background investigation into Mr. Bierly, he was granted a TS/SCI security clearance and was initially appointed to the aforementioned position, which could become effective on August 14, 2022.

51.     However, under the provisions of Mr. Bierly's appointment, Mr. Bierly was required to serve a two-year probationary period that began on 15 June 2020.

52.     Due to excess time in a non-paid status, Mr. Bierly's probationary period completion date was adjusted to May 23, 2023.

53.     Mr. Bierly worked as an intern with the U.S. Cybercommand for a summer internship from June 15, 2020 through July 17, 2020.  During the summer internship with JWAC, Mr. Bierly worked from May 24, 2021 through August 13, 2021.   Lastly, On November 18, 2022, after working in his position with the Air Force from August 15, 2022, Mr. Bierly was issued a Statement of Reasons (SOR) from DCSA notifying him of the DCSA's intent to revoke Mr. Bierly's eligibility for access to classified information.

54.     The SOR cited the Security Executive Agent Directive (SEAD) 4, Guideline D, *Sexual Behavior*, as the basis for the proposed revocation.

---

[2]     An elevated level of TS/SCI could entail two different levels of a "passed" polygraph examination.  These levels of polygraph include either only counterintelligence, and the second, higher level, would entail questions regarding counterintelligence and "lifestyle."  Mr. Bierly was subjected to the counterintelligence and lifestyle polygraph examination.

55.     Specifically, the DCSA stated:

In your polygraph pre-test with a National Security Agency (NSA) polygraph examiner, on February 25, 2020, you admitted that since 2013, around age 15, to present, you view anthropomorphic (Furry) pornography on a daily basis through [a] website… You stated that the last time you masturbated to an image of a 16 year old anthropomorphic image was in January of 2020.  Your history of engaging in criminal sexual behavior by viewing and masturbating to pornographic images of minors and your intent to continue viewing and masturbating to the images of minors is of a security concern.

56.     Mr. Bierly admitted to watching 16 year old Furry pornography when he was 15 years old, and the polygrapher used that age for all subsequent Furry pornography that Mr. Bierly admitted to watching.

57.     Oxford dictionary describes furries as " a person who identifies with and enjoys dressing as an animal, especially a member of a subculture devoted to the practice."[3]

58.     It is legally impossible to guess the age of a human wearing a furry costume, since it is a costume. Furthermore, furry pornography, particularly the kind Mr. Bierly views and admitted to viewing, is generally animated - eliminating any ability to guess the age of the picture.

59.     18 U.S.C. § 2252 defines "child pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—**(A)**the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct…"

60.     A furry could **never** meet the definition of child pornography.

61.     Mr. Bierly's security clearance was revoked for watching constitutionally protected pornography.

---

[3]      "Furry," https://www.merriam-webster.com/dictionary/furry. Accessed Online August 7, 2023.

62.     Despite it being *well-settled* that the government cannot criminalize erotica which *appears* to depict a minor engaging in sexual activity but do not *actually* depict real children - as those are protected speech under the First Amendment of the Constitution[4] - on November 21, 2022, Mr. Bierly was notified by the Air Force of his local suspension of his access to classified information.

63.     On December 12, 2022, Mr. Bierly was notified by the Air Force Office of Special Investigations (AFOSI) that he would be suspended from the Department of the Air Force (DAF) Special Access Programs (SAPs) "due to personal conduct regarding sexual behavior."

64.     Due to being denied access to classified information and SAPs, Mr. Bierly was not allowed to perform the duties required of his position.

65.     As a result, on January 31, 2023, the Air Force sent a memorandum to Mr. Bierly notifying him that he would be terminated during his probationary period due to "Failure to meet a condition of employment."  See Exhibit B.  The Air Force also cited "Title 5, Code of Federal Regulations, Section 315.804, *Termination of Probationers for Unsatisfactory Performance or Conduct*," as the basis

66.     The Air Force indicated in its January 31, 2023 memorandum that the effective date of the termination would be that same day:  January 31, 2023.

67.     Air Force personnel forced Mr. Bierly to either be terminated, or in the alternative, would allow him to resign in lieu of being terminated so long as he made his decision that same day on the spot; Mr. Bierly was not allowed to speak with his parents or his attorney who was already retained to assist him with the response to the SOR and his ongoing employment matters.

---

[4]     *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002).

68.     As a result, Mr. Bierly, who opted to resign, was constructively dismissed from his position with the Air Force without having received advanced notice, without the opportunity to consult with counsel, or the opportunity to respond to allegations made against him.

**DCSA Records Request**

69.     In order for Mr. Bierly to properly respond to the allegations within the SOR, he initially sent a FOIA and Privacy Act request to the DCSA - Ft. Meade location on November 23, 2022.  See Exhibit C.

70.     DCSA - Ft. Meade responded to this request on January 24, 2023 with redactions on the records produced, exempting several pages entirely.   This request was assigned case number DCSA-M23-01865.  See Exhibit D.

71.     Plaintiff sent a new FOIA and Privacy Act request to DCSA-Ft. Meade on April 28, 2023.  See Exhibit E.

72.     DCSA-Ft. Meade acknowledged Plaintiff's request on June 13, 2023 and assigned it number DCSA-M-23-07494.    See Exhibit F.

73.     Plaintiff has not received records from DCSA-Ft. Meade in response to its April 28, 2023 FOIA and Privacy Act Request.

74.     During the course of conversing regarding records releases with DCSA - Ft. Meade, Plaintiff's counsel learned he would need to submit separate responses for each DCSA location maintaining records sought.

75.     As a result, Plaintiff sent FOIA and Privacy Act requests to DCSA - Quantico and DCSA - Boyers on January 4, 2023.  See Exhibits G and H, respectively.

76.     Plaintiff also sent requests in accordance with EO 12968 to DCSA-Quantico and DCSA-Boyers on January 4, 2023.  See Exhibits I and J, respectively.

77.     On January 13, 2023, DCSA - Quantico, released some redacted responsive records and indicated some records were being withheld in their entirety due to being maintained by the FBI.   See Exhibit K.

78.     Plaintiff sent a new FOIA request to DCSA-Quantico on May 10, 2023.  See Exhibit L.

79.     According to the statute, DCSA-Quantico was required to respond on or about June 7, 2023.

80.     To date, DCSA-Quantico has not responded to Plaintiff's proper FOIA and Privacy Act request dated May 10, 2023.

81.     Plaintiff did not receive any acknowledgement or response to its January 4, 2023, FOIA and Privacy Act request to DCSA - Boyers.

82.     Plaintiff sent DCSA-Boyers a new FOIA and Privacy Act request on May 10, 2023.  See Exhibit M.

83.     DCSA-Boyers acknowledged and responded to Plaintiff's May 10, 2023 request on May 17, 2023 disclosing some records and indicated several records were withheld by FinCent.  See Exhibit N.

84.     On June 15, 2023, Plaintiff appealed the response in regard to FinCen's withholdings.  See Exhibit O.

85.     To date, Plaintiff has not received a response to his timely issued appeal to FinCen.

**<u>COUNT I</u>**
**Violation of the First Amendment of the United States Constitution By Infringing on Plaintiff's Right of Freedom of Speech**

86.     The Plaintiff adopts and incorporates by reference paragraphs 1 through 85 as if fully stated.

87.     The Defendant DCSA acted negligently and wrongfully by revoking Plaintiff's security clearance for Plaintiff engaging in completely lawful activity done discreetly in the privacy of his own home.

88.     The First Amendment of the United States Constitution guarantees individuals the right to free speech,  association, and the right to assemble.

89.     The Defendants either intentionally, recklessly, or with callous indifference to the federally protected rights of the Plaintiff have threatened, silenced, and/or chilled Plaintiff's rights to freedom of speech by using Plaintiff's lawful speech, activities, and associations with lawful groups in his private life as the basis to strip him of his security clearance and position with the Air Force.

90.     The Defendants revoked the Plaintiff's security clearance because he engaged in protected speech and activity, and Defendants have determined that such protected activities "raise[] questions about [Bierly's] reliability, trustworthiness, and ability to protect classified or sensitive information."  See Exhibit P.

91.     Defendants' discriminatory actions and associated practices are also overbroad because they prohibit and restrict protected expression and lawful viewing of materials that are protected.

92.     WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant DOD is in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT II
### Violation of the First Amendment - Freedom of Association

93.     The Plaintiff adopts and incorporates by reference paragraphs 1 through 92 as fully stated.

94.     The First Amendment of the United States provides the Freedom of Association.

95.     The Defendants violated the Plaintiff's constitutional protected right of the freedom to associate with others who have similar political, religious, and cultural beliefs.

96.     The Defendants revoked the Plaintiff's security clearance because he associated with individuals with whom he is lawfully entitled to associate, and Defendants have determined that such association "raises questions about [Bierly's] reliability, trustworthiness, and ability to protect classified or sensitive information."  See Exhibit P.

97.     The Defendants' actions violated the Plaintiff's right to Freedom of Association.

98.     WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant is in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT III
### Violation of the First Amendment of the United States Constitution
### - Overbreadth -

99.     Plaintiff realleges paragraphs 1 through 98 as if fully stated herein.

100.     Bierly contends that the procedures or methods used by the Defendants in the clearance process are constitutionally defective.

101.     Specifically, Bierly contends that the DCSA improperly used his protected

activities and speech he disclosed to NSA investigators as a means to revoke his security clearance.

102.    The DCSA incorrectly and improperly categorized Bierly's behavior as "criminal sexual behavior," which is patently false.  See Exhibit P.

103.    DCSA points to SEAD 4, Guideline D: Sexual Behavior as the basis for their authority to determine Bierly's "sexual behavior is a security concern."  *Id*.

104.    As Bierly's speech, activities, and associations are clearly within the protections of the Constitution's First Amendment, the overbreadth doctrine – chilling speech – is directly at issue here.

105.    Even if DCSA did not intentionally mean to make a gross error in determining Bierly's conduct was "criminal," the DCSA could and would rely on the remainder of SEAD 4, Guideline D's language to attempt to justify the end result of revoking Bierly's security clearance.

106.    Specifically, in addition to "Sexual Behavior that involves a criminal offense…" which Bierly clearly did not commit, this Guideline would allow the DCSA to consider sexual behavior that "reflects a lack of judgment or discretion; or may subject the individual to undue influence of coercion, exploitation, or duress…"

107.    This language and the policies, procedures, and methods as relied upon and applied by the DOD could, undoubtedly, regulate a substantial amount of constitutionally protected expression and did so in Bierly's case.

108.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants are in violation of the First Amendment; (2) an injunction compelling the Defendants to cease violating Plaintiff's constitutional rights through using the security clearance

process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT IV
### Violation of the First Amendment of the United States Constitution
### - Vagueness -

109.    Plaintiff realleges paragraphs 1 through 108 as if fully stated herein.

110.    Bierly contends that the procedures or methods used by the Department in the clearance process are constitutionally defective.

111.    Specifically, Bierly contends that the DCSA improperly used his protected activities and speech he disclosed to NSA investigators as a means to revoke his security clearance.

112.    The DCSA incorrectly and improperly categorized Bierly's behavior as "criminal sexual behavior," which is patently false.  See Exhibit P.

113.    Even if DCSA did not intentionally mean to make a gross error in determining Bierly's conduct was "criminal," the DCSA could and would rely on the remainder of SEAD 4, Guideline D's language to attempt to justify the end result of revoking Bierly's security clearance.

114.    Specifically, in addition to "Sexual Behavior that involves a criminal offense…" which Bierly clearly did not commit, this Guideline would allow the DCSA to consider sexual behavior that "reflects a lack of judgment or discretion; or may subject the individual to undue influence of coercion, exploitation, or duress…"

115.    However, this language and what one considers as a "lack of judgment or discretion" or what might subject an individual to "undue influence of coercion, exploitation, or duress" is subjective, vague, ambiguous, and open to numerous interpretations based on

individual preference.

116.     This language and the policies, procedures, and methods as relied upon and applied by the DOD could, undoubtedly, regulate a substantial amount of constitutionally protected expression and did so in Bierly's case.

117.     WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants are in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT V
### Substantive Due Process Claim against the Defendants

118.     The Plaintiff adopts and incorporates by reference paragraphs 1 through 117 as if fully stated.

119.     Plaintiff admitted to Defendant's agencies that he engaged in viewing legal pornographic material in the privacy of his own home.

120.     The Defendants have improperly labeled this material and his actions as "criminal," which is not accurate.

121.     Mr. Bierly's polygraph examination describing these acts and the Defendant's officers' incorrect conclusions and assertions that such conduct was "sexual behavior" that was "criminal" will appear in all subsequent background checks moving forward, was specifically shared with the DCSA, and was specifically shared with his employing agency, the Air Force.

122.     Mr. Bierly has a fundamental right, as a consenting adult, to view the materials he admitted to viewing and performing the act(s) he describes in the privacy of his own home; he

certainly has the right to do so without it being broadcast to countless individuals employed by the Defendant.

123.    Mr. Bierly's activities have been identified as constitutionally recognizable liberty interests.

124.    Because the underlying material and acts are completely lawful to view and engage in, respectively, Defendants' have engaged in egregious misconduct in their determination, subsequent revocation, and resulting loss of employment to Mr. Bierly.

125.    Therefore, the Defendants' misconduct and resulting deprivation of Plaintiff's liberty interests results in a substantive due process violation by Defendants.

126.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants are in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT VI
**Equal Protection / Unequal Enforcement of SEAD 4  against the Defendant**

127.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 126 as if fully stated.

128.    Plaintiff's Fifth Amendment right to equal protection under the law protects him from intentional and arbitrary violation of his fundamental rights.

129.    Plaintiff is entitled to view the materials he admitted to viewing and engage in the activities to which he admitted to the NSA polygraph examiners.

130.    The Defendants have continued to punish Mr. Bierly for engaging in fundamentally protected activity.

131.    The Defendants cannot demonstrate that their policies and practices which attempt to regulate Mr. Bierly's behavior furthers a compelling governmental interest.

132.    The Defendants have not and cannot show that such policies and practices are narrowly tailored to accomplish anything other than unreasonably, unnecessarily, and unlawfully restricting and impeding Plaintiff's fundamental, protected rights.

133.    Additionally, the standardless discretion by Defendants resulted in the inconsistent enforcement of the Defendants' policies and interpretation of existing laws and regulations regarding speech and protected actions that caused violations of the equal protection of the laws afforded to the Plaintiff under the Constitution.

134.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants have violated Equal Protection under the Fifth Amendment of the Constitution; (2) an injunction compelling the Defendant to: (i) cease discriminating against the client; (ii) cease inserting unconstitutional criteria into Defendant's processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

**COUNT VII**
**(Violation of the Administrative Procedures Act - DCSA)**
**Violation of EO 12968, DoDM 5200.02, DoDD 5220.06, and SEAD 4**

135.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 134 as fully stated.

136.    As the Legal Framework ¶¶ 11-40 describes, Plaintiff was entitled to request records relied upon by the agency to make its determination.

137.    Plaintiff made such requests in accordance with EO 12968, and as contemplated and reiterated by DoDM 5200.02 and DoDD 5220.06, on January 4, 2023.

138.    To date, the DCSA has not acknowledged these requests, nor have they complied with these requests whatsoever.

139.    Plaintiff needed to receive and review these materials in order for him to adequately respond to the SOR.

140.    However, in violation of the aforementioned orders, manuals, and directives, the DCSA set a due date for Mr. Bierly's response/rebuttal to his SOR prior to providing said materials.

141.    As a result, Plaintiff was forced to submit his response to the SOR on February 13, 2023.

142.    WHEREFORE, Plaintiff is entitled to relief in the form of a declaratory order that Defendant is in violation of its regulation and an injunction compelling Defendant pursuant to the APA to follow its mandate of EO 12968, DoDM 5200.02, DoDD 5220.06, and SEAD 4.

### COUNT VIII
### (Violation of the Privacy Act, 5 U.S.C. §552a by DCSA)

143.    Plaintiff realleges paragraphs 1 through 142 as if fully stated herein.

144.    Plaintiff is an individual seeking access to information about himself.

145.    Any documentation in the possession, custody, and control of Defendant DCSA is a record maintained in a system of records, as described 5 U.S.C. §552a(a)(4)- (5).

146.    Upon information and belief, there are records responsive to Plaintiff's requests that are being withheld in full, and Defendant DCSA has violated 5 U.S.C. §552a.  The DCSA is wrongfully withholding records and information requested.

147.    Plaintiff has exhausted all required and available administrative remedies.

148.    Plaintiff has a legal right under the Privacy Act to obtain the information he seeks, and there is no legal basis for Defendants' denial of said right; Defendants' refusal to provide Plaintiff with the requested records amounts to a deprivation of Plaintiff's federal rights.

149.    The DCSA's failure to respond to Plaintiff's FOIA requests violated the statutory deadline imposed by the Privacy Act.

150.    WHEREFORE, Plaintiff requests this Court award him the following relief: (1) declare that Defendants violated the Privacy Act; (2) order Defendants to immediately disclose the requested records; (3) award Plaintiff reasonable cost and attorney's fees as provided in 5 U.S.C. §552a(g)(3)(B); and (4) grant such other relief as the Court may deem just and proper.

## COUNT IX
### (Violation of the Freedom of Information Act-5 U.S.C. §552a by DCSA)

151.    Plaintiff realleges paragraphs 1 through 150 as if fully stated herein.

152.    Defendants are unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. §552.

153.    Plaintiff has exhausted applicable administrative remedies.

154.    Although DCSA-Ft. Meade acknowledged Plaintiff's FOIA request on June 13, 2023, DCSA-Ft. Meade's response does not qualify as an appropriate response satisfying its 20-day time limit imposed by statute.

155.    Therefore, DCSA-Ft. Meade has failed to timely respond to Plaintiff's proper FOIA and Privacy Act request, which required a response by on or about May 25, 2023.

156.   DCSA-Quantico has not responded at all to Plaintiff's May 10, 2023 FOIA and Privacy Act request, which under the acts, required a response on or about June 7, 2023.

157.   The Defendants' failure to respond to Plaintiff's FOIA requests violated the statutory deadline imposed by FOIA.

158.   Defendants' actions are preventing Mr. Bierly from reviewing records relied upon in order for him to meaningfully and thoroughly defend himself from allegations being used to deprive him of his employment and means of income.

159.   WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare that Defendants violated the Freedom of Information Act; (2) order Defendants to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552(a)(4)(E); and (4) grant such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF AS TO COUNTS I - VII

**WHEREFORE,** the Plaintiff prayerfully requests that this Court:

160.   Declare that the Defendant is acting in violation of the First and Fifth Amendments of the United States Constitution;

161.   Enjoin the Defendants from continuing to use protected speech, protective activities, and fundamental rights as the basis for revoking his security clearance.

162.   A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on its behalf from continually violating Plaintiff's constitutional rights and associated practices challenged in this Complaint;

163.    Award compensatory damages against Defendant in the amount of $1,500,000.00 (ONE MILLION FIVE-HUNDRED THOUSAND DOLLARS); and

164.    Award Plaintiff his reasonable attorney fees, litigation expenses, and costs as allowed under applicable laws, and grant such other relief as this Court deems just to the Plaintiff and his attorneys.

## PRAYER FOR RELIEF AS TO COUNTS VIII-IX

**WHEREFORE,** the Plaintiff prayerfully request that this Court:

165.    Declare the Defendants' failure to comply with FOIA to be unlawful;

166.    Order the Defendants to conduct an independent and comprehensive search of its documents and records in response to Plaintiff's FOIA Requests;

167.    Order the Defendants to produce all responsive records without further delay or charge;

168.    Enjoin the Defendants from continuing to withhold records responsive to Plaintiff's FOIA and Privacy Act Requests;

169.    Award Plaintiff attorney's fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. 5§52(a)(4)(E); and

170.    Grant such other relief as the Court deems just and proper.


Dated: August 16, 2023                    Respectfully submitted,

                                          By:*/s/ Brett J. O'Brien*
                                          BRETT O'BRIEN, ESQ
                                          Bar License #: 1753983
                                          NATIONAL SECURITY LAW FIRM, LLC
                                          1250 Connecticut Avenue NW
                                          Washington, DC 20036
                                          Phone:  (202) 600-4996
                                          Fax:     (202) 545-6318