UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRANT BIERLY,

                Plaintiff,

     v.

DEPARTMENT OF DEFENSE, et al,

              Defendants.

Civil Action No. 23-2386 (RCL)

**DEFENDANTS' MOTION TO DISMISS COMPLAINT IN PART AND
SUPPORTING MEMORANDUM**

     Defendants Department of Defense ("Defense Department"), Defense Counterintelligence Security Agency ("DCSA"), Department of the Air Force ("Air Force"), and National Security Agency ("NSA") (collectively, "Defendants"), by undersigned counsel, move to dismiss the Complaint in part pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) or 12(b)(6).[1]  As grounds, Defendants state as follows.

**BACKGROUND**

     Plaintiff Grant Bierly was an employee in a probationary status with the Air Force United States Strategic Command, Joint Warfare Analysis Center.  (Compl. ¶¶ 46, 50-52)  As a condition of that employment, Bierly was required to maintain a Top Secret with Special Compartmented Information security clearance.  (*Id.* ¶ 46)  His probationary period was set to expire in May 2023. (*Id.* ¶ 52)

---

[1]     Pursuant to Rule 12(a)(4), unless otherwise ordered by the Court, Defendants do not intend to file an Answer at this time as to the portions of the Complaint not subject to this motion but will do so after resolution of this motion.

On November 18, 2022, DCSA issued a memorandum notifying Bierly of DCSA's intent to revoke his eligibility for access to classified information.  (*Id*. ¶ 53)  DCSA stated:

> In your polygraph pre-test with a National Security Agency (NSA) polygraph examiner, on February 25, 2020, you admitted that since 2013, around age 15, to present, you view anthropomorphic (Furry) pornography on a daily basis through [a] website… You stated that the last time you masturbated to an image of a 16 year old anthropomorphic image was in January of 2020.  Your history of engaging in criminal sexual behavior by viewing and masturbating to pornographic images of minors and your intent to con tinue viewing and masturbating to the images of minors is of a security concern.

(*Id*. ¶ 55)    Bierly admits having watched "16 year old Furry pornography" that gave the impression of a 16-year old engaging in sexual activity.  (*Id*. ¶¶ 56, 62)

On November 21, 2022, the Air Force notified Bierly of the suspension of his access to classified information, and, by letter dated December 12, 2022, notified Bierly of his suspension from all Air Force Special Access Programs "due to personal conduct regarding sexual behavior." (*Id*. ¶¶ 62-63)   As a result of no longer having access to classified information or Special Access Programs, Bierly could no longer meet a condition of his employment and, on January 31, 2023, was notified by the Defense Department's Joint Warfare Analysis Center that his probationary employment would be terminated. (*Id*. ¶¶ 65-66)   In lieu of being terminated, however, Bierly chose to resign his position.  (*Id*. ¶¶ 67-68)

In August 2023, Bierly filed the instant lawsuit.  The Complaint asserts nine counts, six of which purport to assert claims against the Defendants for violation of the Constitution.  (*Id*. ¶¶ 86-134)    A seventh count is purportedly brought under the Administrative Procedures Act ("APA") against DCSA for allegedly failing to respond to a record request that sought the same information as sought concurrently by his Privacy Act and FOIA requests.  (Compl. ¶¶ 75-76, 135-42, Exs. G, H, I and J)  The remaining two counts are brought against the DCSA under the Privacy Act (Count VIII) and the Freedom of Information Act ("FOIA") (Count IX) for allegedly failing

to respond to record requests.  (Compl. ¶¶ 143-59). The government presently seeks dismissal of Counts I to VII with this motion, as well as dismissal of any claim for compensatory damages, and the dismissal of NSA and the Air Force as Defendants.

## STANDARD OF REVIEW

### I.    Rule 12(b)(1) Standard

When reviewing a Rule 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inference in the plaintiff's favor." *Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2001); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999). At the same time, "[t]he court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003). Plaintiff must carry the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Thompson*, 120 F. Supp. 2d at 81; *Vanover*, 77 F. Supp. 2d at 98. In determining whether jurisdiction exists, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  *See Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### II.   Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  In resolving a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court will treat the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Sullivan-Obst v. Powell,* 300 F. Supp. 2d 85, 91 (D.D.C. 2004).  However, the complaint must appear plausible on its face and raise a reasonable expectation that discovery will produce supporting evidence. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]").  In *Twombly*, the Court stated that while there was no "probability requirement at the pleading stage," *id*. at 556, to survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint must be sufficient "to state a claim for relief that is plausible on its face." *Id*. at 570.  The Court referred to this newly clarified standard as the "plausibility standard."  *Id*. at 560-61 (abandoning the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further clarified the plausibility pleading standard, explaining that it "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  *Id*. at 678.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679.

On a motion to dismiss under Rule 12(b)(6), the Court may consider, in addition to the facts alleged in the complaint, documents either attached to, or incorporated into the complaint by reference, as well as matters of which it may take judicial notice.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997); *see also Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("[T]he court may consider the defendants' supplementary material without converting the motion to dismiss into one for summary judgment. This Court has held that where a document is referred to in the complaint and is central to the plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.")

**ARGUMENT**

As discussed more fully below, Plaintiff's claims under Counts I to VII are defective on numerous grounds and should be dismissed. First, Plaintiff has not identified any relief that would be available to remedy his alleged constitutional injury and thus he cannot meet the redressability requirement for standing as to his constitutional claims (Counts I to VI). Second, Plaintiff has failed to plausibly plead any violation of his constitutional rights and thus those counts should be dismissed on that distinct basis were the Court to determine that Plaintiff has standing. Third, Plaintiff's claim under the APA (Count VII) based on DCSA's alleged failure to respond to a request for records fails because FOIA and the Privacy Act provide adequate remedies that preclude a duplicate claim under the APA. Finally, Plaintiff's claim for compensatory damages based on an alleged constitutional violation (Compl. ¶ 163) should be dismissed because there is no waiver of sovereign immunity for monetary damages against the government.

In addition to the defects in his claims, Plaintiff also has named as Defendants two parties that are not alleged to have engaged in any conduct on which his claims are premised. Specifically, although Counts I to VI are nominally asserted against all "Defendants," they are focused on the conduct of DCSA, which is a component of the Defense Department, and not on any conduct by NSA or the Air Force. Moreover, Counts VII, VIII and IX are asserted solely against DCSA. NSA and Air Force therefore should be dismissed because Plaintiff has failed to plausibly plead any conduct by them that could support any of the claims at issue.

I.      **Counts I to VI Should Be Dismissed For Lack Of Standing And Failure To State
        A Claim.**

It is well settled that decisions regarding an employee's eligibility for a security clearance

or access to classified information are not subject to judicial review.   *Dep't of Navy v. Egan*,

484 U.S. 518, 528-30 (1988). Decisions made by security professionals regarding an employee's

eligibility to occupy sensitive positions are similarly not justiciable under *Egan. See, e.g.*, *Foote

v. Moniz*, 751 F.3d 656, 657-59 (D.C. Cir. 2014) (agency security official's decision to deny a

certificate necessary for employment on national security grounds is not justiciable); *Kaplan v.

Conyers*, 733 F.3d 1148, 1166 (Fed. Cir. 2013) (*Egan* extends to all national security

determinations regarding prediction of risk, which includes determinations of employee eligibility

to occupy a sensitive position, regardless of whether the position also required access to classified

information or a security clearance.).   In turn, "employment actions based on [national security

determinations] are not subject to judicial review[.]"   *Bennett v. Chertoff*, 425 F. 3d 999, 1001

(D.C. Cir. 2005); *see also Oryszak v. Sullivan*, 565 F. Supp. 2d 14, 23 (D.D.C. 2008) ("Oryszak

concedes that her employment as a Special Agent was conditional upon her having top secret

security clearance. Because the agency's decision to revoke her security clearance must stand, its

subsequent decision to terminate her employment based at least partially, if not entirely, on her

lack of proper security clearance must stand as well.")

Apparently recognizing this bar to judicial review, Plaintiff seeks to bring his claims within

an exception to *Egan* for "actions alleging deprivation of constitutional rights." *Ryan v. Reno*, 168

F. 3d 520, 524 (D.C. Cir. 1999).   A plaintiff, however, cannot circumvent *Egan* by asserting an

"immaterial" or "'wholly frivolous'" constitutional claim as Plaintiff seeks to do here. *Palmieri v.

United States*, 896 F. 3d 579, 585 (D.C. Cir. 2018).  But even if review is not barred by *Egan*, any

such constitutional claim still must satisfy Article III standing requirements and plausibly plead a

viable claim for relief to survive a motion to dismiss.   Thus, even were the Court to consider Plaintiff's claims not to be "'wholly frivolous'" (notwithstanding the deficiencies discussed below), they still fail for lack of standing and failure to state a claim.

>    **A.    Plaintiff Lacks Standing Because He Has Not Identified A Remedy That This Court Can Provide To Redress His Alleged Constitutional Injury.**

Standing is "'not dispensed in gross.'"  *Davis v. FEC*, 554 U.S. 724, 734 (2008).  "Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press and 'for each form of relief' that is sought."  *Id.*  Plaintiff lacks standing to pursue his constitutional claims because he cannot establish that his alleged constitutional injury is redressable.   The "irreducible constitutional minimum of standing" contains three requirements: (1) the plaintiff must have suffered an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  A plaintiff lacks standing, and a court lacks jurisdiction, where, as here, none of the relief sought by the plaintiff would likely remedy his alleged injury.  *See Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 109-110 (1998).

As relief for his constitutional claims, Plaintiff seeks (1) a declaration that his constitutional rights were violated, (2) an injunction prohibiting Defendants "from continuing to use protected speech, protective activities, and fundamental rights as the basis for revoking his security clearance" and from otherwise violating his "constitutional rights," (3) compensatory damages in the amount of $1.5 million, and (4) an award of reasonable attorneys' fees.  (Compl. ¶¶ 92, 98, 108, 117, 16, 134, 160-64)   Plaintiff also seeks an injunction "compelling the Defendant to: (i) cease discriminating against [plaintiff]; (ii) cease inserting unconstitutional criteria into Defendant's processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused.  (*Id*. ¶ 134)

None of these remedies, however, can be awarded by the Court even if Plaintiff established a constitutional violation (which he has not).

*First,* Plaintiff's allegations concern an alleged past injury—a November 2022 notice of intent to revoke his security clearance—that he claims led him to resign his employment with the Air Force.   For that alleged past injury, Plaintiff seeks an award of compensatory damages, but the government has not waived sovereign immunity for a claim of money damages against a government agency. *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984); *Carmichael v. Blinken*, Civ. A. No. 19-2316, 2022 U.S. Dist. LEXIS 54571, at *45 (D.D.C. Mar. 25, 2022) (dismissing plaintiff's damage claims under the Fifth Amendment because sovereign immunity was not waived for those claims).   Accordingly, Plaintiff's claimed injury cannot be redressed through monetary relief.[2]

*Second*, under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), a plaintiff has standing to seek prospective relief such as an injunction or declaratory judgment only if he has made sufficient allegations that he is threatened with future illegality.   *See id.* at 105, 109; *see also Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991) ("In injunction suits, plaintiffs usually must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries.")   Allegations of future injury, moreover, must be "particular and concrete."   *Steele,* 523 U.S. at 109.

But no potential future injury has been alleged here.   Having resigned his position with the Air Force, Bierly no longer has a need to access classified information and no longer is subject to any security clearance process.   And, once Bierly resigned his position, DCSA lost jurisdiction

---

[2]      Plaintiff's claim for attorneys' fees also is insufficient. *Uzuegbunam v. Preczewski,* 141 S. Ct. 792, 801 (2021) ("A request for attorney's fees or costs cannot establish standing because those awards are merely a 'byproduct' of a suit that already succeeded, not a form of redressability.")

to adjudicate its preliminary decision to revoke his access to classified information. *See* https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/520002m.pdf, § 9.3 ("DoDM 5200.02") (last visited Dec. 19, 2023).[3]  Bierly also does not allege that he is currently seeking employment with the government, let alone employment in which a security clearance would be necessary.  S*ee Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp*., 28 F.3d 1268, 1272-74 (D.C. Cir. 1994) (finding that plaintiffs did not have standing to seek injunctive or declaratory relief under Title VII because they could not establish a likelihood that they would later be discriminated against by the employment agency given that they had applied for employment only for the purpose of exposing discrimination and based on fictitious credentials and their misrepresentations about their desire for jobs).  Accordingly, Plaintiff lacks standing to seek injunctive or declaratory relief.[4]  And, to the extent Plaintiff seeks an order directing Defendants to "adjudicate Plaintiff's clearance issue favorably" (Compl. ¶134), that would be precluded by *Egan*.

---

[3]    Defense Department policy states that "[a] loss of jurisdiction results when an individual retires, separates, or ends their affiliation with [the Department] before an adjudications facility can make an eligibility determination." *See* DoDM 5200.02 § 9.3(a). DCSA's November 18, 2022 memorandum notifying Bierly of an intention to revoke his eligibility to access classified information was a "preliminary decision" that resulted in the suspension of Bierly's access to classified information.  (ECF No. 3-1 at 30)   Bierly was afforded the opportunity to provide a response before the decision would become final (ECF No. 3-1 at 30-31) and, after obtaining an extension, did so on February 14, 2023.  (Compl. ¶ 141; Declaration of Maria Lilly ("Lilly Decl.") ¶ 2(b))  Because of his resignation on January 31, 2023, however, DCSA lost jurisdiction to continue to adjudicate the clearance issue.  (Lilly Decl. ¶ 2(e))

[4]    Although *Lyons* addressed only standing to seek injunctive relief, this Court in *Fair Employment Council* held that the "same rationale . . . would also have kept [plaintiff in *Lyons*] from bringing a suit for declaratory relief."  28 F.3d at 1273.  In any event, the Supreme Court recently held that the possibility of declaratory relief "cannot alone supply jurisdiction otherwise absent."  *California v. Texas*, 141 S. Ct. 2104, 2116 (2021).

Third, Plaintiff cannot obtain reinstatement to his position with the Air Force (or other related equitable relief like back pay) because his position requires access to classified information and, per *Egan*, that is not relief that the Court can grant.  In addition, he cannot obtain reinstatement because the resigned from his position.  *See Taylor v. FDIC*, 132 F.3d 753, 767 (D.C. Cir. 1997); *see also Maney v. Brinkley Municipal Waterworks & Sewer Dep't*, 802 F.2d 1073, 1075 (8th Cir. 1986) ("As a general rule, employees are entitled to awards such as back pay and reinstatement only if they were actually or constructively discharged from their employment."); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342 (10th Cir. 1986) (similar).  In such a situation, the employee's resignation is an "independent cause[]" of his separation; "having left under circumstances for which the [employer] is not legally culpable, … [the plaintiff] cannot claim that the [employer] has deprived [him] of [his] job[], even if its prior treatment of [him] … was actionable." *Taylor,* 132 F.3d at 767.[5]  The law presumes that a resignation is voluntary, *Peters v. District of Columbia,* 873 F. Supp. 2d 158, 196 (D.D.C. 2012), and Plaintiff's single, conclusory allegation that he was "constructively dismissed" (Compl. ¶ 68) is insufficient to plead otherwise.  *Sewell v. Hugler,* No. 08-5079, 2009 U.S. App. LEXIS 4136, at *3-4 (D.C. Cir. Feb. 25, 2009) ("a plaintiff must show not only that her working environment was hostile, but also that it 'became so intolerable that her resignation qualified as a fitting response.'"); *Sandler v. Blinken*, Civ. A. No. 21-2226 (DLF), 2022 U.S. Dist. LEXIS 177733, at *30 n.11 (D.D.C. Sept. 29, 2022) (failure to plead allegations sufficient to establish a hostile work environment precludes a constructive discharge claim).

---

[5]     Bierly's resignation also prevents him from establishing the causation requirement of standing. *Taylor*, 132 F.3d at 767 ("Our rejection of Pederson and Taylor's claim of constructive discharge is concomitantly a decision that their voluntary acts are sufficient independent causes of their separation" and "even if [defendant's] prior treatment of them, though falling short of constructive discharge, was actionable[,]" they "[f]ail[] to show causation [and] lack standing").

Because Plaintiff is not entitled to any relief that would redress his alleged injury, he lacks standing to maintain his claims.  Accordingly, Counts I to VI should be dismissed under Rule 12(b)(1).

**B.     Plaintiff Has Failed To Plausibly Plead A Constitutional Violation Under Counts I to VI**

      1.     Plaintiff's Freedom of Speech and Association Claims (Counts I and II) Fail.

Plaintiff alleges that Defendants violated his First Amendment right to freedom of speech by "using Plaintiff's lawful speech" as a basis to "strip him of his security clearance and position with the Air Force." (Compl. ¶ 89)  Plaintiff separately contends that Defendants violated the First Amendment by "revok[ing]" his security clearance "because he associated with individuals with whom he is lawfully entitled to associate, and Defendants have determined that such association 'raises questions about [Bierly's] reliability, trustworthiness, and ability to protect classified or sensitive information.'"  (*Id.* ¶ 96)

These claims seek to circumvent the *Egan* bar by couching in constitutional terms a challenge to the discretionary judgment of security professionals as to the type of information that could pose a security risk.   Such "'mouthing [of] a constitutional claim'" is insufficient to bypass *Egan* "lest [it] swallow the rule that security clearance revocations are committed to agency discretion."  *Deryck v. Dep't of Def.*, Civ. A. No. 22-3290, 2023 U.S. Dist. LEXIS 80267, at *11 (D.D.C. May 8, 2023).   These purported First Amendment claims are a far cry from a claim challenging the constitutionality of "'methods used to gather information on which a [clearance decision] presumably will be based'" that the D.C. Circuit has allowed to proceed.  *Id.*  Instead, they go to the predictive judgments that *Egan* committed to the "broad discretion" of security personnel and which the Court cannot second guess.  *Egan*, 484 U.S. at 529; *see also Rattigan v.*

*Holder*, 689 F.3d 764, 767 (D.C. Cir. 2012) ("security clearance requires a '[p]redictive judgment' that 'must be made by those with the necessary expertise in protecting classified information.'").

Should the Court nevertheless consider these claims to be subject to judicial review, however, they still fail because there is no free speech or associational protections for viewing child pornography.   *United States v. Williams*, 553 U.S. 285, 288 (2008).  Plaintiff misstates the issue by contending that the images he viewed, and which he admits appeared to depict child pornography, may not have involved an actual child.  (Compl. ¶¶ 55-56, 62)    The relevant point is that he admitted in his polygraph to "watching 16 year old Furry pornography" (*id*. ¶ 56) and that admitted conduct is not protected by the First Amendment.

Even if Bierly ultimately could prove that the images were not of an actual child, DCSA acted based on an understanding that Bierly admitted to viewing pornography involving a 16-year old, and Bierly confirms in his Complaint to have made an admission that could be so interpreted. (Compl. ¶¶ 56, 62)   The conduct described by Bierly in his polygraph thus was not protected speech and, consequently, DCSA could not have violated Bierly's First Amendment rights in preliminarily deciding to revoke his access to classified information based on that conduct. If that understanding was mistaken as Bierly now claims, that is not a basis to contend that DCSA acted in violation of the First Amendment but instead is a challenge to a predictive judgment made based on facts as understood at the time that is not reviewable under *Egan*. *See Rattigan*, 689 F.3d at 769-70 (recognizing that "the entities charged with making security clearance decisions—here the Security Division—need full access to even unsubstantiated and doubtful information in order to make the sensitive, predictive judgments that *Egan* protects . . . [W]e conclude that because broad liability for such reporting could compromise the integrity of decisions that are shielded from judicial intrusion . . . allowing such liability would conflict with *Egan*.").

2.     Plaintiff's Overbreadth and Vagueness Claims (Counts III and IV) Fail.

The November 18, 2022, memorandum included a Statement of Reasons for the preliminary determination revoking Bierly's access to classified information.  That Statement of Reasons cited Guideline D of the Security Executive Agent Directive ("SEAD" or "Directive')," which reads in relevant part:

> Sexual Behavior that involves a criminal offense; reflects a lack of judgment or discretion; or may subject the individual to undue influence of coercion, exploitation, or duress may be disqualifying. These issues, together or individually, may raise questions about an individual's judgment, reliability, trustworthiness, and ability to protect classified or sensitive information. Sexual behavior includes conduct occurring in person or via audio, visual, electronic, or written transmission.

(ECF No. 3-1 at 33)   In Count III, Plaintiff appears to contend that the above provision could regulate a substantial amount of constitutionally protected speech and is therefore facially invalid under the "overbreadth doctrine."  (Compl. ¶¶ 105-07)  In Count IV, Plaintiff contends that the language of this provision as to "what one considers as a 'lack of judgment or discretion' or what might subject an individual to 'undue influence of coercion, exploitation, or duress' is subjective, vague, ambiguous, and open to numerous interpretations based on individual preference" and could regulate a "substantial amount of constitutionally protected expression."  (*Id.* ¶ 115-16)

Plaintiff has failed to plausibly plead a claim under either the overbreadth doctrine or the void-for-vagueness doctrine.

a.     *The Overbreadth Doctrine*

The overbreadth doctrine is a "sparingly" applied doctrine employed as a "last resort" when a statute punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep."  *Broadrick v. Oklahoma*, 413 U.S. 601, 613-15 (1973).  Thus, "where conduct and not merely speech is involved," the overbreadth must "not only be real, but substantial." *Id.* at 615.  In other words, although broadly worded laws "may deter protected speech

to some unknown extent, there comes a point where that effect -- at best a prediction -- cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Id.*

Even if the doctrine could apply to a provision of the Security Executive Agent Directive, which Defendants do not concede, Plaintiff has failed to plausibly plead facts that could state a claim based on that doctrine as to the provision at issue. Guideline D regarding sexual behavior is directed at conduct, not speech, and has a plainly legitimate sweep for purposes of assessing whether to grant access to classified information. Even if some conduct within its ambit could be characterized as expressive, Guideline D does not impact a "substantial" amount of allegedly protected speech in relation to the government's legitimate interest in ensuring that recipients of classified information have not engaged in conduct that could subject them to undue influence of coercion, exploitation, or duress, or that raises concerns about their judgment and reliability.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id*. at 801. "To maintain the appropriate balance between protecting free speech and avoiding the 'harmful effects' of 'invalidating a law that in some of its applications is perfectly constitutional,' courts have 'vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.'" *United States v. Nassif*, 628 F. Supp. 3d 169, 178 (D.D.C. 2022).

Because Guideline D addresses conduct that is a plainly legitimate consideration for assessing access to classified information, and Plaintiff has failed to plead facts demonstrating that it is substantially overbroad, Count III should be dismissed. *Broadrick*, 413 U.S. at 616-18 (statute that "regulates a substantial spectrum of conduct that is as manifestly subject to state regulation as the public peace or criminal trespass" is not "substantially overbroad" even if "some persons' arguably protected conduct may or may not be caught  or chilled by the statute"); *Credico v. Dep't of Homeland Sec*., Civ. A. No. 15-1127, 2016 U.S. Dist. LEXIS 202844, at *2 (D.D.C. Apr. 28, 2016) (rejecting overbreadth doctrine claim on the basis that plaintiff "has failed to present any basis for the Court to conclude that the statute is so 'substantial[ly]' overbroad as to outweigh its 'plainly legitimate sweep'").

### b.     The Void-for-Vagueness Doctrine

The void-for-vagueness doctrine generally holds that criminal statutes must be sufficiently specific that they provide "fair warning" of the conduct that is proscribed based on the principle grounded in due process that "'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'"  *United States v. Lanier*, 520 U.S. 259, 265-66 (1997).  To the extent applicable outside the criminal context, if at all, the doctrine is limited to statutes that implicate an interest protected by the due process clause.  *See Smith v. Goguen*, 415 U.S. 566, 572-73 (1974) (explaining that "the due process doctrine of vagueness . . . incorporates notions of fair notice or warning [and] requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement'");  *Arnett v. Kennedy*, 416 U.S. 134, 161-62 (1974) (finding the term "'such cause as will promote the efficiency of the service' as a standard of employee job protection" was not impermissibly vague).  As discussed in section 3 below, there is no such

recognized interest in the security clearance context and thus no basis for Bierly to rely on the void-for-vagueness doctrine.

But even if the void-for-vagueness doctrine could be applicable to Guideline D, that guideline is not unduly vague.  It provides notice that sexual behavior of a criminal nature, or that reflects a lack of judgment or discretion, or could subject an individual to undue influence, may be considered in assessing eligibility for a security clearance.   Given the "impracticability of greater specificity," and "ordinary common sense" as to what might constitute non-discrete sexual behavior, the guideline provides fair notice.  *Arnett,* 416 U.S. at 161 ("Because of the infinite variety of factual situations in which public statements by Government employees might reasonably justify dismissal for 'cause,' we conclude that the Act describes, as explicitly as is required, the employee conduct which is ground for removal" and recognizing that "the most conscientious of codes that define prohibited conduct of employees include 'catchall' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.'"); *San Fillipo v. Bongiovanni*, 961 F.2d 1125, 1139 (3d Cir. 1992) ("In the public employment context, the Supreme Court has reiterated that the vagueness doctrine is based on fair notice that certain conduct puts persons at risk of discharge. Such standards are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge.")

3.      Plaintiff's Substantive Due Process Claim (Counts V) Fails.

In Count V, Plaintiff asserts that Defendants "have engaged in egregious misconduct in their determination, subsequent revocation, and resulting loss of employment to Mr. Bierly" that he contends constitutes a substantive due process violation based on deprivation of unspecified "liberty interests."  (Compl. ¶¶ 123-25)  As Bierly seems to recognize, to state a substantive due

process claim, he must establish a deprivation of a protected liberty or property interest. *Elkins v. District of Columbia*, 690 F.3d 554, 561-62 (D.C. Cir. 2012). He has failed to do so.

First, the Supreme Court has held that "it should be obvious that no one has a 'right' to a security clearance." *Egan*, 484 U.S. at 528. Thus, Bierly has no entitlement to access to classified information and, consequently, no claim that Defendants deprived him of a property interest. *Doe v. Cheney*, 885 F.2d 898, 909 (D.C. Cir. 1989). Bierly likewise has no constitutionally protected property interest in a job that requires access to classified information as a condition of employment. *Deryck,*2023 U.S. Dist. LEXIS 80267, at *7-8 .

Second, Bierly does not specifically identify the alleged "liberty interests" on which he bases his claim but suggests they pertain to his loss of access to classified information and resignation from the Air Force. (Compl. ¶ 124)   The D.C. Circuit has recognized "the possibility of an action for deprivation of a liberty interest without due process" in the employment context under two theories: (1) "reputation-plus" or (2) "stigma or disability." *McCormick v. District of Columbia*, 752 F.3d 980, 987-88 (D.C. Cir. 2014) (noting further that, when the plaintiff is an at-will employee, the availability of a claim under either theory "is at best very narrow."); *O'Donnell v. Barry*, 148 F.3d 1126, 1140-42 (D.C. Cir. 1998) (discussing reputation-plus and stigma or disability claims). And the D.C. Circuit has assumed without deciding that an employee may have a cognizable liberty interest in a security clearance under the same theories. *Palmieri*, 896 F.3d at 587 (referencing plaintiff's "allegations that the government's actions have made it impossible for him to find work").[6]

---

[6]     *Palmieri* based this assumption on *Doe*, where the Court considered whether the plaintiff there had pled a reputation-plus claim. *Doe*, 885 F.2d at 909-10.

Bierly, however, has pled neither a reputation-plus or stigma or disability claim. "A 'reputation-plus' claim requires a plaintiff to identify an act of defamation made in 'conjunction' with an adverse employment action." *Langeman v. FBI*, No. 22-5264, 2023 U.S. App. LEXIS 32774, at *13-14 (D.C. Cir. Dec. 12, 2023). For reasons already addressed, Bierly has failed to plead facts that could establish that his resignation was a constructive discharge and thus he has failed to plausibly allege an adverse employment action as would be necessary to state a reputation-plus claim. *Hendrix v. Napolitano*, 77 F. Supp. 3d 188, 194 (D.D.C. 2015) ("An employee's resignation or retirement is presumed to be voluntary and not an adverse action, unless the employee overcomes the presumption by showing that the resignation or retirement was involuntary, and therefore qualifies as a constructive discharge.")

Moreover, when a plaintiff proceeds under a reputation-plus theory, he must allege that the challenged defamatory statement was publicly disseminated. *Langeman*, 2023 U.S. App. LEXIS 32774, at *16; *Orange v. District of Columbia*, 59 F.3d 1267, 1274-75 (D.C. Cir. 1995) ("injury to reputation cannot occur in the absence of public disclosure of the allegedly damaging statements"; holding that there was no actionable Fifth Amendment claim where there was no public disclosure of the allegedly defamatory statements); *Doe*, 885 F.2d at 990 ("Restricted disclosure of such material to other federal agencies, with clear limits on further distribution, is not stigmatizing and does not infringe upon constitutional liberty interests."). Bierly has made no such allegation and therefore has failed to plausibly plead the deprivation of a liberty interest based on a reputation-plus theory.

A stigma or disability claim requires "the combination of an adverse employment action and 'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities.'" *O'Donnell*, 148 F.3d at 1140. As already addressed, and in light of

his voluntary resignation from the Air Force, Bierly has failed to plausibly plead an adverse employment action.   A plaintiff also must plead that there was "an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability," which Bierly also has not done.  *Langeman*, 2023 U.S. App. LEXIS 32774, at *17.   In the absence of allegations that plausibly could establish a cognizable property or liberty interest, Bierly's due process claim fails.  *Id*. at *18-19.

### 4.  Plaintiff's Equal Protection Claim (Count VI) Fails.

In Count VI, Bierly alleges that the "standardless discretion by Defendants resulted in the inconsistent enforcement of the Defendants' policies and interpretation of existing laws and regulations regarding speech and protected actions that caused violations of the equal protection of the laws afforded to the Plaintiff under the Constitution." (Compl. ¶ 133)  However, to establish a "class of one" equal protection claim where Plaintiff is not a member of a suspect class, he must show that there was "(1) disparate treatment of similarly situated parties (2) on no rational basis." *3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003); *Dixon v. District of Columbia*, 666 F.3d 1337, 1342 (D.C. Cir. 2011).   Plaintiff has failed to plead any facts identifying anyone who was similarly situated to him or treated differently from him. Consequently, he has failed to state an equal protection claim. *Dixon*, 666 F.3d at 1344.

## II.   Plaintiff's APA Claim In Count VII Based On The Alleged Failure To Respond To A Record Request Should Be Dismissed Because There Is An Available Remedy Outside The APA.

Following his receipt of the November 18, 2022, memorandum, Plaintiff alleges that he made a request to DCSA for records in accordance with Executive Order 12,968 and that DCSA failed to comply with that request. (Compl. ¶¶ 137, 142)  Specifically, Plaintiff alleges that, on January 4, 2023, he sent FOIA and Privacy Act requests to DCSA and, on the same day, sent to

DCSA "requests in accordance with EO 12968." (*Id.* ¶¶ 75-76, citing Exs. G, H, I, J)  The FOIA and  Privacy Act requests included requests for the same information that Plaintiff requested under the Executive Order.  (*Compare id.* Exs. G, H (items 4 and 5) *with* Exs. I, J)  Plaintiff purports to assert a claim under the APA to compel DCSA to provide a response to the requests he made under the Executive Order.  (Compl. ¶ 142)

Executive Order 12,968 provides, in relevant part, that government employees who are determined not to meet the standards for access to classified information shall be provided "within 30 days, upon request and to the extent the documents would be provided if requested under the Freedom of Information Act . . . or the Privacy Act . . . , as applicable, any documents, records, and reports upon which a denial or revocation is based."  60 Fed. Reg. 40,245, 40,252 § 5.2(2) (Aug. 7, 1995).   Plaintiff, however, cannot assert a claim under the APA based on that provision because the two statutes that it references (the Privacy Act and FOIA) provide an available remedy for him to seek production of the same information that he requested under the Executive Order.[7]

The APA provides for judicial review of agency action when it is made reviewable by statute or when there is "no other adequate remedy in a court."  5 U.S.C. § 704; *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).  Generally, if Congress has provided a separate cause of action

[7]     Although Plaintiff purports to bring an APA claim, the basis for Plaintiff's challenge is not final agency action, but rather agency inaction.  Accordingly, the requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply.  *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*") (emphasis added); *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539–40 (D.D.C. 2021) (noting the two flavors of APA review—review of agency action and agency inaction—concluding both are considered on an administrative, not discovery record, on summary judgment).  Moreover, the production of an administrative record at this stage is unnecessary—the United States seeks to dismiss this case not based on an administrative record, but instead based on the facts alleged in the Complaint.  *See generally Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (Lamberth, J.) (noting that often "if an agency fails to act, there is no 'administrative record' for a federal court to review.")

or an independent review procedure, then APA review is precluded. *Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) (citing *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)). The alternative relief provided by the cause of action or procedure does not need to be identical to preclude APA review, but it must be adequate and of the "same genre." *Feinman*, 713 F. Supp. 2d at 76 (quoting *El Rio*, 396 F.3d at 1272).

When an APA claim "[seeks] remedies made available by FOIA," the APA remedies are of the "same genre" as those available under FOIA, and thus the claim is outside of the judicial review provided for under the APA. *Feinman*, 713 F. Supp. 2d at 76; *see also Kenney v. Dep't of Just.*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) (finding that FOIA precludes APA claims that an agency did not respond to FOIA request in an adequate amount of time). Here, Bierly's request for records under the Executive Order overlapped with concurrent requests that he made under the Privacy Act and FOIA. The Executive Order, moreover, only permits disclosure of records to the same extent permitted under the Privacy Act and FOIA. 60 Fed. Reg. at 40,252 § 5.2(2). Accordingly, any claim asserted by Bierly under the APA for the requested records should be dismissed because he has available remedies under the Privacy Act and FOIA. *Feinman*, 713 F. Supp. 2d at 76; *Kenney*, 603 F. Supp. 2d at 190.[8]

## III.    Plaintiff's Claim for Compensatory Damages Should Be Dismissed

Bierly asserts a claim for compensatory damages based on an alleged constitutional violation in the amount of $1.5 million. (Compl. ¶ 163) That claim for monetary damages should

---

[8]    Neither Executive Order 12,968 nor DoDM 5200.02 create any independent right that provides a cause of action under the APA. *See* Exec. Oorder 12,968, 60 Fed. Reg. at 40254 § 7.2(e); DoDM 5200.02 § 9.1(b)

be dismissed because, as established above, there is no waiver of sovereign immunity for monetary damages against the government. *Carmichael*, 2022 U.S. Dist. LEXIS 54571, at *45.

**IV.**   **NSA and Air Force Should Be Dismissed As Defendants**

NSA and Air Force should be dismissed as party-defendants to this lawsuit because the claims asserted generally against all "Defendants"—Counts I to VI—are based on the conduct of DCSA, not NSA or the Air Force.  The remaining counts, moreover, are solely directed at DCSA. Consequently, because no claim has been plausibly pled against them, NSA and Air Force should be dismissed from this case.

The only reference to NSA in the Complaint is as the entity that conducted the polygraph examination during which Bierly made the statements on which DCSA later relied in issuing the November 18, 2022 intent to revoke his access to classified information.  (Compl. ¶¶ 55, 101) Bierly, however, has not asserted any claim based on the manner in which the polygraph examination was conducted and thus has no basis to name NSA as a defendant in this action.   With respect to Air Force, from which Plaintiff resigned (*id.* ¶ 68), the law presumes that a resignation is voluntary, *Peters,* 873 F. Supp. 2d at 196, and Plaintiff's single, conclusory allegation that he was "constructively dismissed" (Compl. ¶ 68) is insufficient to plead otherwise.  *Sewell*, 2009 U.S. App. LEXIS 4136, at *3-4.   As Plaintiff has not asserted a cause of action for constructive discharge, nor pled any facts that could support such a claim, he likewise has no claim against the Air Force.

\*     \*     \*

## CONCLUSION

For the foregoing reasons, Counts I to VII of the Complaint should be dismissed, the claim for compensatory damages should be dismissed, and NSA and Air Force should be dismissed as defendants.

Dated:  December 22, 2023
        Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:  _____/s/ Jeremy S. Simon_____
      JEREMY S. SIMON, D.C. Bar #447956
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      202-252-2528

*Attorneys for the United States of America*