**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GRANT BIERLY**, | |
| *Plaintiff*, | |
| **v.** | Case No. 23-cv-2386-RCL |
| **DEPARTMENT OF DEFENSE**, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION**

Plaintiff Grant Bierly is a former probationary Air Force employee whose role required access to classified national security information.  The Defense Counterintelligence and Security Agency (DCSA) notified Bierly and his employer that his security clearance was likely to be revoked due to a polygraph interview in which Bierly admitted to viewing certain types of pornography.  The Air Force suspended his access to classified information and, soon thereafter, notified Bierly that it would terminate his employment.  Bierly resigned immediately, before the Air Force could terminate him and before the DCSA rendered a final decision whether to revoke his security clearance.  Bierly sent numerous requests to the DCSA for agency records related to his security clearance under the Freedom of Information Act (FOIA), the Privacy Act, Executive Order 12,968, and various Department of Defense (DoD) regulations.  The DCSA responded with multiple productions, but withheld and redacted numerous records responsive to Bierly's requests.

Bierly brings this suit against the DCSA and its parent agency, the DoD, as well as the Air Force and the National Security Agency (NSA).  He alleges that the suspension of his security clearance and ensuing constructive termination constituted multiple constitutional violations.  He also alleges that the DCSA's document withholdings are noncompliant with FOIA, the Privacy

Act, Executive Order 12,968, and the Administrative Procedure Act (APA).  The defendants move to dismiss Bierly's constitutional arguments, arguing that Bierly lacks standing and, alternatively, has failed to state a claim.  Defendants additionally move to dismiss Bierly's APA claim as duplicative of his FOIA and Privacy Act claims.  Both parties have also moved for summary judgment on most of Bierly's claims, including his FOIA and Privacy Act claims.

For the reasons contained herein, the Court will largely **GRANT** the defendants' motion to dismiss, although one part of the motion will be **DENIED AS MOOT**.  The Court will also **GRANT** the defendants' motion for summary judgment as to Bierly's FOIA and Privacy Act claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are mostly undisputed.  In 2020, Bierly was offered employment with the Air Force Joint Warfare Analysis Center in Dahlgren, Virginia as a Student Trainee. Compl. ¶¶ 46, 51, ECF No. 1.  As a condition of his employment, Bierly was required to maintain a Top Secret with Special Compartmented Information (TS/SCI) security clearance, for which he was polygraphed by NSA investigators in February 2020.  *Id.* ¶ 46–47.  Starting in June 2020, Bierly began working for the Air Force in a probationary capacity.  *Id.* ¶ 51.  His probationary status was initially set to expire in June 2022, but was extended until May 2023.  *Id.* ¶¶ 51–52.

In November 2022, the DCSA notified Bierly of its intent to revoke his security clearance pursuant to Security Executive Agent Directive (SEAD) 4, Guideline D, which provides for revocation on the basis of the subject's sexual behavior.  *Id.* ¶ 53–54.  DCSA's notification included a Statement of Reasons (SOR) document, explaining the agency's rationale for its preliminary revocation determination.  The SOR indicated that, during his polygraph, Bierly admitted to viewing pornographic videos featuring "furries," which may refer either to real people wearing animal costumes or to animated images of anthropomorphic animals.  *Id.* ¶¶ 55, 57–58.

Bierly confessed that some of the furries in the videos he watched were depicted as minors as young as age 16.  *Id.* ¶ 56.  The SOR advised that Bierly's history of "engaging in criminal sexual behavior by viewing and masturbating to pornographic images of minors" and intent to continue doing so constituted a "security concern."  *Id.* ¶ 55.  For his part, Bierly objects to characterizing the videos as child pornography because they featured animated characters rather than actual 16-year-old people.  *Id.* ¶¶ 58, 62.  The SOR instructed Bierly that he could contest the DCSA's preliminary determination by responding to the SOR in writing.  SOR Instructions, Corrected Compl. Ex. A, ECF No. 3-1.

Shortly after receiving the SOR, Bierly began sending document production requests under FOIA and the Privacy Act to DCSA's offices at Fort Meade, Quantico, and Boyers, seeking documents that could help him respond to the DCSA's preliminary determination of his security clearance.  Compl. ¶¶ 69, 75.  Bierly's requests, in chronological order, were as follows[1,2]:

- In November 2022, Bierly sent a request to DCSA-Fort Meade ("Request 1"), to which the agency responded in January 2023.  Compl. ¶ 69; Watters Decl. ¶¶ 7, 9, Defs.' Mot. for Summ. J. Ex. 5, ECF No. 24-5.  Bierly did not file an administrative appeal of the agency's response.  Watters Decl. ¶ 9.

---

[1] After comparing Bierly's complaint to the Watters Declaration and both parties' exhibits, it appears that the complaint misstates the date on which some of these requests were first submitted.  In any event, their exact timing is unimportant for purposes of this dispute.

[2] Many of the documents listed in the DCSA's *Vaughn* index are accompanied by a tracking number indicating the batch of documents in which they were disclosed.  Documents tagged with tracking number 23-01865 were produced in response either to Request 1 or Request 2.  Documents tagged with tracking number 23-02947 were produced in response to Request 3.  Documents tagged with tracking number 23-07625 were produced in response to Request 4 or 5.  Documents tagged with tracking number 23-07494 were produced in response to Request 6.  *See* Watters Decl. ¶¶ 7, 8, 11, 15, 21.

- In January 2023, Bierly sent requests to DCSA-Quantico and DCSA-Boyers ("Requests 2 and 3," respectively), to which the agency responded that same month.  Compl. ¶ 75; Watters Decl. ¶¶ 8, 11, 14.  Bierly did not appeal these responses either.  Watters Decl. ¶ 14.

- In April 2023, Bierly sent additional requests to DCSA-Boyers and DCSA-Quantico ("Requests 4 and 5," respectively), to which the agency responded in May 2023. Compl. ¶¶ 78, 82; Watters Decl. ¶¶ 19–22.  Because some of the documents that DCSA produced in response to Requests 4 and 5 contained redactions on behalf of the Department of the Treasury's Financial Crimes Enforcement Network (FinCEN), DCSA instructed Bierly that any administrative appeal of these redactions should be lodged directly with FinCEN.  Watters Decl. Ex. D.  Bierly submitted an appeal to FinCEN in June 2023 as instructed.  Compl. ¶ 84; Watters Decl. ¶ 22.

- Also in April 2023, Bierly submitted another request to DCSA-Fort Meade ("Request 6"), to which the agency responded with a determination in August 2023, a few days after Bierly had initiated this action.  Compl. ¶ 71; Watters Decl. ¶ 16.  Bierly filed an administrative appeal of DCSA's response the following month.  Watters Decl. ¶ 18.

In tandem with Bierly's FOIA and Privacy Act requests, Bierly also requested documents pursuant to Executive Order 12,968, which provides that "[a]pplicants and employees who are determined to not meet the standards for access to classified information . . . shall be . . . provided within 30 days, upon request and to the extent the documents would be provided if requested under the Freedom of Information Act or the Privacy Act, . . . any documents, records, and reports upon which a denial or revocation is based . . . ."  60 Fed. Reg. 40245 (1995).  Because Bierly's Executive Order 12,968 request and his correlative FOIA and Privacy Act requests all sought

substantially the same records, DCSA merged the requests as they came in and provided combined document productions in response.  Watters Decl. ¶¶ 8, 12.

In December 2022, the Air Force notified Bierly that his access to Air Force Special Access Programs was suspended due to the DCSA's preliminary security clearance determination. *Id.* ¶ 63.  As a result of this suspension, Bierly no longer satisfied the conditions of his employment.  Accordingly, on January 31, 2023, the Air Force advised Bierly that his employment was to be terminated that day, but permitted him to resign in lieu of being dismissed.  *Id.* ¶¶ 65– 67.  Bierly elected to resign.  *Id.* ¶ 68.  The defendants characterize Bierly's resignation as voluntary, Mot. to Dismiss 10, ECF No. 15, whereas Bierly describes it as a constructive dismissal, Compl. ¶ 68.

Bierly sued, naming the DoD, DCSA, Air Force, and NSA as defendants.  Bierly's complaint lists nine causes of action.  The first six are constitutional claims relating to the suspension of his security clearance and his alleged constructive dismissal, and the latter three are statutory claims relating to his requests for documents.

Bierly's constitutional claims are as follows: Count I claims that viewing animated furry pornography is protected speech under the First Amendment, and that DCSA's suspension of his security clearance therefore infringes this right.  Compl. ¶¶ 86–92.  Count II argues that DCSA's suspension of his security clearance abridges Bierly's First Amendment freedom to associate with others who share his political, religious and cultural beliefs.  *Id.* ¶¶ 93–98.  Count III contends that SEAD 4, which allows the DCSA to withhold clearance based on sexual behavior that "demonstrates a lack of judgment or discretion . . . or may subject the individual to undue influence of coercion, exploitation, or duress," is unconstitutionally overbroad under the First Amendment. *Id.* ¶¶ 99–108.  Count IV challenges the same language in SEAD 4 as unconstitutionally vague.

*Id.* ¶¶ 109–17.  Count V is a substantive due process claim, arguing that the viewing of legal pornographic material is a protected liberty interest that the DCSA has wrongfully abridged. *Id.* ¶¶ 118–26.  Count VI is a Fifth Amendment Equal Protection argument, alleging that the defendants have unequally and arbitrarily applied SEAD 4 against Bierly, and that this uneven application fails strict scrutiny.  *Id.* ¶¶ 127–34.

Turning to Bierly's statutory claims: Count VII is an APA claim, alleging that DCSA failed to comply with his document requests as required by Executive Order 12,968 and two DoD regulations, DoD Manual 5200.02 and DoD Directive 5220.06.  *Id.* ¶¶ 135–42.  Count VIII argues that DCSA failed to comply with its document production obligations under the Privacy Act, 5 U.S.C. § 552a.  *Id.* ¶¶ 143–50.  Finally, Count IX argues that DCSA's document productions are not compliant with FOIA.  *Id.* ¶¶ 151–59.

As relief for his constitutional grievances, Bierly requests a declaration that the defendants have violated the First and Fifth Amendments; an injunction forbidding the defendants from using constitutionally protected activities as a basis for denying Bierly's security clearance; compensatory damages of $1.5 million; attorney fees and costs; and such other relief as the Court deems proper, which may include a favorable re-adjudication of his security clearance, reinstatement of his prior employment, or backpay.  *Id.* ¶¶ 134, 160–64.  For his statutory claims, Bierly seeks a declaration that the Defendants have violated FOIA, the Privacy Act, Executive Order 12,968, and DoD regulations, an injunction ordering the defendants to produce his requested documents, and attorney fees.  *Id.* ¶¶ 142, 165–70.

The defendants have moved to dismiss Bierly's constitutional claims under Federal Rule of Civil Procedure 12(b)(1), arguing that Bierly's challenge to his security clearance determination is nonjusticiable or, alternatively, that he lacks standing.  Mot. to Dismiss 6–11.  The defendants

further argue that, even if the Court has jurisdiction to entertain Bierly's constitutional arguments, he has failed to state a claim upon which relief can be granted, and therefore dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 11–19. The defendants also contend that Bierly's APA claim should be dismissed for failure to state a claim because APA review is unavailable where Congress has provided an adequate alternative statutory cause of action—in this case, FOIA and the Privacy Act. *Id.* at 19–21. Next, the defendants argue that Bierly's claims for compensatory damages should be dismissed due to sovereign immunity, *id.* at 21–22, and that the Air Force and NSA should be dismissed as defendants because the plaintiff has not alleged any injury specifically attributable to them. *Id.* at 22. Bierly filed a response, Opp'n to Mot. to Dismiss, ECF No. 21, to which the defendants have replied, Reply to Opp'n to Mot. to Dismiss, ECF No. 26.

Bierly also moved for summary judgment on all counts except for Count VII, his APA claim. Pl.'s Mot. for Summ. J., ECF No. 20. Defendants have cross-moved for summary judgment on all counts, in a document that also serves as their reply in support of their motion to dismiss. Reply to Opp'n to Mot. to Dismiss, ECF No. 26. Bierly has filed a response to defendants' cross-motion for summary judgment, Opp'n to Defs.' Mot. for Summ. J., ECF No. 29, to which the defendants have replied, Reply to Opp'n to Defs.' Mot. for Summ. J., ECF No. 33. Therefore, the motion to dismiss and the cross-motions for summary judgment are ripe for this Court's review.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(1): Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action where the Court lacks subject matter jurisdiction, and it is therefore the proper procedural vehicle for challenging a plaintiff's standing to sue. *Johnson v. Dist. of Columbia*, 71 F. Supp. 3d 155, 158 (D.D.C. 2014) (Lamberth, J.). "As the party invoking federal jurisdiction, the plaintiff bears the

burden of establishing standing." *Strunk v. Obama*, 880 F. Supp. 2d 1, 3 (D.D.C. 2011) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998), and *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).   To establish standing, a plaintiff must satisfy Article III's three "irreducible constitutional minim[a]," namely: 1) an injury to a "legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; 2) a "causal connection between the injury and the conduct complained of"; and 3) a demonstration that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal citations and quotations omitted).

When evaluating a plaintiff's standing pursuant to a Rule 12(b)(1) challenge, a court must accept all the non-movant's factual allegations as true.   *Hill v. Smoot*, 308 F. Supp. 3d 14, 18 (D.D.C. 2018) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)).   However, because the Court has an obligation to independently assure itself of its subject-matter jurisdiction, the plaintiff's allegations "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a [Rule] 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1350 (2d ed. 1987)).

**B.  Rule 12(b)(6): Motion to Dismiss for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of an action when a plaintiff fails to plead facts that, if accepted as true, suffice to state "a claim . . . that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   The plaintiff must allege enough to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A court considering a 12(b)(6) motion to dismiss must accept the factual

allegations in the complaint as true for purposes of the motion, but need not accept "[t]hreadbare recitals of the elements of a cause of action" or credit naked legal conclusions advanced by the plaintiff.  *Id.*

### C.  Rule 56(a): Motion for Summary Judgment in the FOIA Context

To succeed on a motion for summary judgment, a movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The movant bears the initial burden of "identifying those portions of the record it believes 'demonstrate the absence of a genuine issue of material fact.'"  *White v. Wash. Nursing Facility*, 206 F. Supp. 3d 137, 143 (D.D.C. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the movant has made an adequate showing, summary judgment is granted unless the party opposing the motion "set[s] forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quotation omitted).  Summary judgment is also appropriate if the party opposing the motion "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  A court considering a motion for summary judgment must construe the evidence in the light most favorable to the party opposing the motion, must draw all reasonable inferences in their favor, and must avoid weighing the evidence or making credibility determinations.  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  But the parties may not

"rest upon . . . mere allegations or denials," *Anderson*, 477 U.S. at 248, and must point to more than a mere "scintilla of evidence in support" of their own position. *Id.* at 252.

"Disputes arising from an agency's response to a request for records under either the FOIA or the Privacy Act 'typically and appropriately are decided on motions for summary judgment.'" *Willis v. FBI*, No. 17-cv-1959-KBJ, 2019 WL 2138036, at *4 (D.D.C. May 16, 2019) (Brown Jackson, J.) (quoting *Jud. Watch, Inc. v. Dep't of Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014)). An agency is entitled to summary judgment in a FOIA or Privacy Act dispute if it "demonstrates that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (internal citation omitted).

## III.    ANALYSIS

### A.  The Court Lacks Subject Matter Jurisdiction to Entertain Bierly's Constitutional Claims

The Court will grant the defendants' motion to dismiss Bierly's constitutional claims, enumerated as Counts I–VI in his complaint, because the Court is unable to award any of Bierly's requested forms of relief.  Therefore, Bierly's complaint is not redressable by a favorable decision of this Court, and must be dismissed for lack of standing pursuant to Rule 12(b)(1).

*(i)   The* Egan *Justiciability Bar Does Not Compel Dismissal Under Rule 12(b)(1) Because It Is Not a Jurisdictional Doctrine*

As a preliminary matter, before broaching their standing argument, the defendants first raise a justiciability argument based on *Department of the Navy v. Egan*, which held that "the grant of security clearance to a particular employee . . . is committed by law to the appropriate agency of the Executive branch."  *Dep't of Navy v. Egan*, 484 U.S. 518, 527–28 (1988).  It follows from

this principle that "employment actions based on denial of security clearance are not subject to judicial review . . . ." *Bennett v. Chertoff*, 425 F.3d 999, 1001 (D.C. Cir. 2005). The defendants then retreat slightly from this justiciability argument: They confess that there is a supposed "exception to *Egan* for 'actions alleging deprivation of constitutional rights,'" Mot. to Dismiss 6 (quoting *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999)), but urge that this exception cannot rescue "'a wholly frivolous constitutional claim or . . . one advanced solely for the purpose of' circumventing *Egan*." *Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018) (quoting *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993)).

In fact, the D.C. Circuit has never explicitly decided whether there is an exception to *Egan* for constitutional claims. *See Palmieri*, 896 F.3d at 590–91 (Katsas, J., concurring) (explaining that the D.C. Circuit has yet to squarely confront this "weighty and difficult" question).[3] But this Court need not—indeed, may not—consider the scope of the supposed constitutional exception to *Egan* or decide whether Bierly's claims fit within it, because to do so would be to put the cart before the horse. The *Egan* bar is properly considered under Rule 12(b)(6), not Rule 12(b)(1). *see Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009) (holding that *Egan* does not operate as a "jurisdictional bar," but that a challenge to a security clearance revocation "fail[s] to state a claim

---

[3] In *Greenberg*, the D.C. Circuit held only that Egan permits constitutional challenges to the "methods used to gather information on which [security clearance] judgments presumably will be based," leaving untouched the thornier question of whether a plaintiff could challenge a "discretionary judgment regarding a particular employee's security clearance" on constitutional grounds. *Greenberg*, 983 F.2d at 290 (emphasis added). Other D.C. Circuit cases have similarly gestured to the question without deciding it. *See, e.g.*, *Ryan*, 168 F.3d at 524 (suggesting, but not holding, that interpreting *Egan* to bar "actions alleging deprivation of constitutional rights" may be inconsistent with *Webster v. Doe*, 486 U.S. 592, 603 (1988)); *Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) ("[A]ctions based upon denial of security clearance are committed to agency discretion by law, at least where a constitutional claim is not properly presented."); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 400 (D.C. Cir. 1990) (noting the federal courts' obligation and "authority to consider the constitutional claims resulting from agency personnel decisions"). However, at least one court in this district has held that "valid constitutional claims are not foreclosed by Egan." *Garcia v. Pompeo*, No. 18-cv-1822-APM, 2020 WL 134865, at *8 (D.D.C. Jan. 13, 2020). Other circuits have as well. *See, e.g.*, Stehney v. Perry, 101 F.3d 925, 932 (3d Cir. 1996) (Scirica, J.); *Dubbs v. CIA*, 866 F.2d 1114, 1120 (9th Cir. 1989); *see also Gill v. U.S. Dep't of Just.*, 875 F.3d 677, 682–84 (D.C. Cir. 2017) (Tatel, J., concurring) (arguing that viable constitutional challenges to security clearance determinations must be justiciable under *Webster*, despite Egan).

upon which relief can be granted" because *Egan* leaves the court with "'no meaningful standard against which to judge the agency's exercise of discretion'") (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).  And it is elementary that where, as here, a court is ""confronted with a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the Court must first consider whether it has subject-matter jurisdiction." *Hamilton v. United States*, 502 F. Supp. 3d 266, 272 (D.D.C. 2020) (citing *Steel Co.*, 523 U.S. at 94–95).  Accordingly, this Court may not consider whether *Egan*'s justiciability bar controls the Government's 12(b)(6) motion unless it has subject-matter jurisdiction to hear Bierly's constitutional claims, which in turn demands that Bierly have standing. He does not.

### *(ii) Bierly Lacks Standing To Bring His Constitutional Claims Due to Deficiencies of Redressability and Causation*

The defendants contend that Bierly lacks standing to litigate his constitutional claims because the Court is unable to grant any form of relief requested in his complaint, therefore failing the constitutional requirement of redressability.  The defendants also argue that Bierly lacks standing because his voluntary resignation severed the causal relationship linking the defendants' challenged conduct to Bierly's injury.  For the following reasons, the Court agrees.

First, Bierly has requested two different forms of monetary relief: compensatory damages, and costs and attorney fees.  However, the Court cannot award compensatory damages because "[s]overeign immunity bars lawsuits for money damages against the United States and its agencies absent a specific waiver by the federal government." *Emrit v. Nat'l Insts. of Health*, 157 F. Supp. 3d 52, 54 (D.D.C. 2016).  Bierly's complaint identifies no waiver of sovereign immunity, and he appears to concede this point by failing to raise the issue in either his response to the motion to dismiss or his own motion for summary judgment.  And it is well-established that attorney fees

and costs alone cannot satisfy the redressability element of Article III standing. *Steel Co.*, 523 U.S. at 107 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself.")

Bierly's claims for injunctive relief fare no better. Bierly requests reinstatement of his security clearance, but the Court may not order this remedy because it would represent a *de facto* judicial adjudication of the merits of his clearance application, an inquiry that is solely committed to the Executive branch. *Egan*, 484 U.S. at 529. Neither could the Court restore Bierly to his prior role without the required security clearance, or alter the level of security clearance required for the role, as either form of relief would impermissibly intrude on the Executive's "broad discretion to determine who may have access to [classified information]." *Id.*; *see also Skees v. Dep't of Navy*, 864 F.2d 1576, 1578 (Fed. Cir. 1989) (stating that for a court to modify the clearance level that a position requires would be "to do indirectly . . . what was forbidden by *Egan*: that an outside nonexpert body second-guess the [agency's] judgment on protection of classified information in its charge"); *Mitchell v. Crowell*, 966 F. Supp. 1071, 1079 (N.D. Ala. 1996) (holding that *Egan* removes the court's power "to allow plaintiff to remain in the position without a security clearance, or to alter the position so as not to require a security clearance").

Bierly's request for backpay is a closer call, but ultimately falters on the same grounds. An aggrieved employee seeking injunctive relief such as backpay for an adverse employment event related to some position—for instance, being fired or not promoted—must ordinarily be qualified for that position. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 & n.6 (1981) (explaining this principle in the Title VII context). Just so here: to claim entitlement to backpay, Bierly must demonstrate to the Court that he was qualified for the position from which he was

separated, a determination that *Egan* forbids the Court to make.  *See Ryan*, 168 F.3d at 523–24 (noting that, in an employment dispute involving a security clearance, the court cannot assess the legitimacy of an employer's justification for an adverse employment action "without running smack up against *Egan*").  Awarding backpay to Bierly would be tantamount to determining that Bierly is entitled to access classified information, no less a usurpation of Executive prerogative than if the Court simply ordered his clearance reinstated.

Bierly also requests prospective injunctive relief, in the form of an order that the defendants cease violating his constitutional rights by refraining from using the same allegedly unconstitutional criteria against him in his clearance determination.  As noted above, the security clearance suspension that led to Bierly's dismissal was based on a preliminary assessment; the final adjudication never happened.  However, the Court could not order the defendants to proceed to a final adjudication of Bierly's security clearance because, per DoD regulations, the DCSA lost jurisdiction over his security clearance process as soon as he separated from the Air Force.  *See* Decl. of Maria Lilly 1, Mot. to Dismiss Ex. 2, ECF No. 15-2; DoD Manual 5200.02 § 9.3(a) (explaining that "when an individual retires, separates, or ends their affiliation with DoD before an adjudications facility can make an eligibility determination . . . the adjudication facility will cease all work on the individual's adjudicative record").[4]  And even if the Court *could* do so, redressability would still not be satisfied, because it would remain entirely speculative whether the agency would adjudicate his application favorably the second time around so as to cure Bierly's alleged injury.

---

[4] The fact that Department of Defense regulations expressly preclude completing Bierly's security clearance process while he is separated from the agency distinguishes this case from others in which courts have ordered, or at least asserted the ability to order, a re-adjudication of the plaintiff's clearance.  *See, e.g.*, *El-Ganayni v. Dep't of Energy*, 591 F.3d 176, 183 (3d Cir. 2010); *Stehney*, 101 F.3d at 931.

Bierly also lacks standing to seek an order requiring the defendants to refrain from using the challenged criteria to adjudicate a *future* clearance application, whether lodged by him or anyone else, because Bierly has not concretely alleged that he will ever again be subject to a security clearance screening by any of the defendants. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that a plaintiff lacks standing to seek forward-looking injunctive relief if it is "speculative . . . that he will again experience injury as the result of [the challenged] practice even if continued"). The complaint does not, for example, claim that Bierly has applied or will soon apply for another security clearance from the same—indeed, any—agency.[5]

That leaves only Bierly's request for declaratory relief. True, the Court could theoretically issue a declaration that the defendants violated the Constitution when they suspended Bierly's access to sensitive information and told him that he would be terminated from his post. But it is axiomatic that "where the plaintiff[] seek[s] declaratory . . . relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *see also Grand Lodge of the Fraternal Ord. of Police*, 185 F. Supp. 2d at 15 n.4 ("The fact that [a plaintiff] seeks a declaratory judgment does not obviate its need to show standing."). If a plaintiff could satisfy redressability on the basis of declaratory relief for past injuries alone, it would seriously neuter Article III's case or controversy requirement and lead to a maelstrom of lawsuits predicated

---

[5] Bierly's attempts to cure this deficiency are too little, too late. First, in his opposition to the motion to dismiss, he states that he "worked his entire young professional life in the government," and that "it appeared obvious that was where his career aspirations lied." Opp'n to Mot. to Dismiss 11. Second, in his opposition to the defendants' motion for summary judgment, Bierly attaches an affidavit stating that he has applied for and failed to obtain positions requiring a security clearance. Bierly Aff., Opp'n to Defs.' Mot. for Summ. J. Ex. 2, ECF No. 29-2. But "[i]t is well-settled that a party cannot amend his complaint through motions briefing," so the Court need not consider either of these addenda. *Sinha v. Blinken*, No. 20-cv-2814-DLF, 2021 WL 4476749, at *3 (D.D.C. Sept. 30, 2021). Moreover, even if Bierly had properly included the statement about his "career aspirations" in his complaint, it would not be enough to change the speculative nature of Bierly's alleged future harms. Finally, while Bierly's failed applications to jobs requiring a security clearance may have supported a claim for prospective injunctive relief in the past, Bierly attests that he has since accepted another job and—importantly—does not claim that he is still seeking employment requiring a clearance. Bierly Aff.

on abstract grievances and petty grudges.  A plaintiff cannot invoke the jurisdiction of the federal courts solely to brag to their opponent, "I told you so!"

### (iii) Bierly Lacks Standing Because His Resignation Severed the Causal Link Between the Defendants and His Injuries

There is another reason that Bierly lacks standing, at least with respect to his claims for injunctive relief.  To establish standing, a plaintiff must show that the defendant caused the injury for which he is seeking redress.  *Lujan*, 504 U.S. at 560–61.  In the employment context, the D.C. Circuit has held that if—as here—a plaintiff is seeking injunctive relief, such as reinstatement to a prior job, a plaintiff's "voluntary departure" from that position "creates a large hole in their cause of action . . . ."  *Taylor v. FDIC*, 132 F.3d 753, 767 (D.C. Cir. 1997).  A plaintiff who leaves a job of his own will and then asks the Court to restore him to that role "seek[s] a remedy for injury that is in large part self-inflicted"; the plaintiff's choice to leave is a "sufficient independent cause of [his] separation" from the employer.  *Id.*  Such an employee, "[f]ailing to show causation . . . lack[s] standing."  *Id.*

The parties dispute whether Bierly's departure from the Air Force was voluntary or a constructive discharge.  If Bierly had chosen not to resign, the practical outcome for him would have been the same: he would have been terminated that same day.  But legally, the choice to resign or be terminated matters.  "An employee's resignation or retirement, when the only other available option for the employee is removal by the employer for valid reasons, does not qualify as constructive discharge."  *Hill v. Gray*, 28 F. Supp. 3d 47, 61 (D.D.C. 2014) (citing *Keyes v. Dist. of Columbia*, 372 F.3d 434, 439–40 (D.C. Cir. 2004)); *accord Terban v. Dep't of Energy*, 216 F.3d 1021, 1026 (Fed. Cir. 2000) ("[W]here an employee is faced with the unpleasant alternative of resigning or being subjected to an adverse action, the resulting resignation cannot be

considered an involuntary retirement unless the employee shows that the agency lacked reasonable grounds for threatening to take the adverse action.").  The Air Force had abundant cause to dismiss Bierly: he was unable to access classified material and therefore unable to perform the core functions of his role.  Whether his inability to access this material stemmed in turn from a constitutional violation has no bearing on whether his employer, the Air Force, had cause for the dismissal.  Therefore, Bierly's resignation must be considered voluntary, leaving Bierly without standing to seek injunctive relief such as reinstatement to his former role or backpay.[6]

Bierly has not identified any form of non-declaratory relief that the Court could grant in his case.  His voluntary resignation from the Air Force also vitiates the causal link between his injuries and the defendants' actions.  For both reasons, Bierly lacks standing to prosecute his constitutional claims.  The defendants' motion to dismiss these claims under Rule 12(b)(1) will accordingly be granted.

### B.  Bierly's APA Claim is Dismissed for Failure to State a Claim

The defendants have moved under Rule 12(b)(6) to dismiss Bierly's APA claim, enumerated as Count VII, for failure to state a claim, on the theory that APA review is available only if "there is no other adequate remedy in a court . . . ."  5 U.S.C. § 704; *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").  This motion will be granted.

The defendants contend that Bierly has adequate remedies available to him under FOIA and the Privacy Act, so his APA claim must be dismissed.  Mot. to Dismiss 19–21.  Bierly responds

---

[6] The conclusion that Bierly's resignation was voluntary is buttressed by the fact that Mr. Bierly never asked to speak with counsel or his parents before resigning.  *See* Newton Decl. ¶ 14, Defs.' Mot. for Summ. J. Ex. 6, ECF No. 24-6.  Further, when the Air Force later gave him the opportunity to retroactively withdraw his resignation and be categorized as terminated instead, he declined (through counsel) to give an answer.  *See* Email from Brett O'Brien to Adam Leonatti, Opp'n to Mot. to Dismiss Exhibit B, ECF No. 21-1.

that FOIA and the Privacy Act are not adequate alternatives to Executive Order 12,968, the lynchpin of his APA claim, because the Executive Order imposes a deadline for document production whereas FOIA and the Privacy Act do not.  But as Bierly rightly concedes, in *Haleem v. U.S. Department of Defense*, a court in this District "recently ruled against a plaintiff for very similar arguments that are advanced herein by Bierly."  Opp'n to Defs.' Mot. for Summ. J. 26 (citing *Haleem v. U.S. Dep't of Def.*, No. 23-cv-1471-JEB, 2024 WL 230289, at *12–15 (D.D.C. Jan. 22, 2024) (Boasberg, C.J.)).  Bierly's claims in this dispute will meet the same fate.

First, as the *Haleem* court noted, the D.C. Circuit has frequently held that FOIA offers an adequate remedy for plaintiffs seeking documents from agencies, and courts in this district have held the same with respect to the Privacy Act.  *Haleem*, 2024 WL 230289, at *14 (collecting cases).  Second, although Bierly's requested declaratory relief—a declaration that the defendants violated Executive Order 12,968 and DoD regulations—is atypical of a FOIA or Privacy Act suit, both statutes afford the courts "wide latitude . . . to fashion remedies," leaving a remedial gap too narrow to render these statutes inadequate.  *Id.* (citing *Citizens for Resp. & Ethics in Wash.*, 846 F.3d 1235, 1242 (D.C. Cir. 2017)); *see also Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (holding that an alternative remedy "need not provide relief identical to relief under the APA" to be considered an adequate alternative, "so long as it offers relief of the 'same genre'") (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)).  Third, Bierly points out that Executive Order 12,968 prescribes a 30-day document production deadline, whereas FOIA and the Privacy Act provide no fixed deadline for document production.  Opp'n to Mot. to Dismiss 26.  But the D.C. Circuit has held that "Executive Order 12,968 creates no judicially enforceable rights" because it "states that its purpose was only for internal management and that it created no private rights."  *Moyar v. U.S. Dep't of Def.*, No.

23-5085, 2024 WL 2795958, at *3 (D.C. Cir. May 31, 2024) (internal quotations omitted). Because "agency compliance with the order is not . . . subject to judicial review," *id.*, its promise of a 30-day document production deadline is aspirational at best, and cannot be held up as proof of FOIA and the Privacy Act's comparative inadequacy.

Bierly tries to escape the implications of *Haleem* by arguing that, even if Executive Order 12,968 does not create private rights conducive to APA review, the DoD's implementing regulations—DoD Manual 5200.02 and DoD Directive 5220.06—do create such rights. Maybe, but no matter: Neither regulation textually incorporates Executive Order 12,968's 30-day document production deadline, the only thing that, according to Bierly, distinguishes them from FOIA and the Privacy Act.

Bierly has no basis to claim that FOIA and the Privacy Act are inadequate alternatives to Executive Order 12,968 or its associated regulations. Accordingly, he fails to state a claim under the APA, and Count VII will be dismissed pursuant to the defendants' Rule 12(b)(6) motion.[7]

## C. Bierly's Claims for Compensatory Damages Are Dismissed for Failure to State a Claim

The defendants have moved under Rule 12(b)(6) to dismiss any claim for compensatory damages. Mot. to Dismiss 21–22. Bierly's prayer for relief requests compensatory damages only in relation to Counts I–VII. Compl. ¶¶ 163. As already discussed, Counts I–VI will be dismissed for lack of subject matter jurisdiction, and Count VII will be dismissed for failure to state a claim. Therefore, even though the Court has already agreed that compensatory damages are unavailable

---

[7] It may also be true, as in *Haleem*, that Bierly's APA claim is foreclosed because Executive Order 12,968 only requires the Department of Defense to produce documentation based on a final clearance determination, which the DCSA has not rendered as to Bierly. *See Haleem*, 2024 WL 230289, at *15. Because this argument is not briefed in this case and there are sufficient alternative reasons to dismiss Bierly's APA claim, the Court does not reach this issue.

in this action due to Bierly's failure to identify a waiver of sovereign immunity, the defendants' motion to dismiss Bierly's claims for compensatory damages will be denied as moot.

### D.  The NSA and Air Force Are Dismissed as Party-Defendants

The defendants have moved to dismiss the NSA and Air Force as party-defendants.  Mot. to Dismiss 22.  At this time, only Bierly's FOIA and Privacy Act claims remain.  These claims are nominally addressed to all the defendants in this case.  *See* Compl. ¶ 165.  However, in substance they implicate only the DCSA, the sole defendant to whom Bierly submitted document requests, and the DoD, its parent agency.  *See* Compl. ¶¶ 69–85.  Because neither of Bierly's surviving claims concern the NSA or Air Force whatsoever, the defendants' motion will be granted, and both entities will be dismissed as party-defendants.

### E.  The Remaining Defendants' Motion for Summary Judgment Is Granted

The only remaining dispute is the parties' cross-motions for summary judgment on Bierly's FOIA and Privacy Act claims (Counts VIII and IX).[8]  Bierly has failed to exhaust administrative remedies as to most of his FOIA and Privacy Act requests.  For the few where Bierly has met the requirements for judicial review, the defendants have conducted an adequate search, properly withheld documents pursuant to statutory exemptions, and disclosed reasonably segregable materials as required.  Therefore, the defendants' motion for summary judgment as to Counts VIII and IX will be granted, while Bierly's will be denied.

---

[8] Bierly briefly moves, in vain, for summary judgment on the following set of facts: "(1) that Plaintiff's alleged criminal conduct was not in fact criminal; (2) that lawful pornographic material cannot be used as a criteria in security clearance adjudications; and (3) that SEAD 4, Guideline D, violates the overbreadth and vagueness doctrines found within the constitution [sic]."  Pl.'s Mot. for Summ. J. 5.  Bierly presents this request as distinct from his motion for summary judgment on his constitutional claims, but the former is transparently in service to the latter.  Because the Court lacks subject matter jurisdiction to entertain Bierly's constitutional arguments, rendering judgment on any of these issues would constitute an impermissible advisory opinion.

(i)  *Bierly Failed to Exhaust Administrative Remedies as to Most of His FOIA and Privacy Act Requests*

Once a plaintiff submits a FOIA request, the agency has 20 business days to respond with a "determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 65 (D.C. Cir. 1990) (citing 5 U.S.C. § 522(a)(6)(A)(i)). "Assuming an agency's initial response complies with these requirements, the FOIA requester must appeal to the head of the agency." *Id.* If a plaintiff fails to abide by these procedures, e.g. by filing suit too early or failing to appeal, his claim is ordinarily subject to dismissal for failure to exhaust administrative remedies. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). There are limited exceptions to this rule. First, because administrative exhaustion under FOIA is a prudential rather than jurisdictional requirement, a court "may reach the merits of a FOIA claim notwithstanding one's failure to exhaust if the 'purposes and policies underlying the exhaustion requirement,'" such as affording adequate time for the agency to apply its expertise and compile a record for review, "are not undermined." *Kishore v. U.S. Dep't of Just.*, 575 F. Supp. 2d 243, 253 (D.D.C. 2008) (quoting *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004)). Second, if the agency fails to timely render a determination on an initial FOIA request or an administrative appeal, the plaintiff is deemed to have constructively exhausted his administrative remedies and may seek judicial review. *Shteynlyuger v. Ctrs. for Medicare and Medicaid Servs.*, 698 F. Supp. 3d 82, 105 (D.D.C. 2023). However, a plaintiff may only sue on a theory of constructive exhaustion if the agency does not "cure[] its failure to respond within the statutory period by responding to the FOIA request before suit is filed." *Oglesby*, 920 F.2d at 63.

As with FOIA, "a plaintiff alleging a violation of the Privacy Act's access-to-records provision . . . is required to exhaust administrative remedies prior to filing a civil action." *Charles v. United States*, No. 21-cv-1983-BAH, 2022 WL 951242, at *7 (D.D.C. Mar. 30, 2022) (Howell, C.J.). "To properly exhaust administrative remedies, a plaintiff must submit a Privacy Act request to the agency and seek review within the agency under the agency's regulations." *Mulhern v. Gates*, 525 F. Supp. 2d 174, 183 (D.D.C. 2007). Relevant here, the DoD's regulations require a requester to first file an administrative appeal of their adverse determination, which must be made in writing to the "appellate authority listed in the notification of denial letter" within 60 days of denial. 32 C.F.R. § 310.6. Importantly, unlike FOIA, the Privacy Act "contains no . . . constructive-exhaustion provision." *Makuch v. FBI*, 2000 WL 915640, at *4 (D.D.C. Jan. 5, 2000). Accordingly, a plaintiff seeking document access under the Privacy Act must *actually* exhaust the recipient agency's regulatory procedures.

As discussed above, Bierly did not appeal DCSA's responses to Requests 1, 2, or 3 before filing this action. For these three requests, then, Bierly failed to exhaust administrative remedies, and the Court accordingly grants summary judgment to the defendants under both FOIA and the Privacy Act. However, DCSA did not respond to Request 6 until a few days after the lawsuit was filed, and well after FOIA's 20-day response window had elapsed. Therefore, Bierly has constructively exhausted his administrative remedies as to Request 6, which is therefore eligible for judicial review under FOIA. But because he did not file an administrative appeal to Request 6 until after filing his lawsuit, he failed to *actually* exhaust the administrative remedies set forth in DoD regulations, and therefore cannot seek judicial review of Request 6 under the Privacy Act.

That leaves Requests 4 and 5. The defendants concede that Bierly's appeal of this request to FinCEN, which was unanswered when he filed suit, constitutes administrative exhaustion under

FOIA.  Defs.' Mot. for Summ. J. 34.  Defendants argue, however, that the Court cannot review Requests 4 and 5 under the Privacy Act review because Bierly failed to actually exhaust his administrative remedies, for three reasons.  *Id.* 43–44.  First, although Bierly appealed to FinCEN as DCSA instructed him to do, Bierly did not name FinCEN as a defendant in the lawsuit.  Second, Bierly filed his lawsuit while his appeal to FinCEN was still pending.  Third, a delay in an agency's response, however long, does not constitute exhaustion of remedies under the Privacy Act, which requires that an agency outright "'refuse[] to comply' with the plaintiff's request for access . . . ." *Kvech v. Holder*, No. 10-cv-545-RLW, 2011 WL 4369452, at *8 (D.D.C. Sept. 19, 2011) (quoting 5 U.S.C. § 522a(g)(1)(B); *see also Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 40 (D.C. Cir. 1987) (holding that the Privacy Act "provides no exemption from administrative review when an agency fails, even by several months, to abide by a deadline").

The Court is not persuaded.  First, the defendants concede that Bierly's administrative appeal to a non-party constitutes exhaustion under FOIA, but argue that it cannot under the Privacy Act.  This stance is not merely paradoxical; it also stands in tension with the DoD's own Privacy Act regulations, which require the requester to appeal their adverse determination "to the appellate authority listed in the notification of denial letter"—in this case, FinCEN.  32 C.F.R. § 310.6(a); Watters Decl. Ex. D.  In a comparable FOIA and Privacy Act dispute, *Palmieri v. United States*, the Office of Personnel Management redacted documents on behalf of FinCEN, which had been dismissed as a party by stipulation.  *Palmieri v. United States*, 194 F. Supp. 3d 12, 23 (D.D.C. 2016) (Bates, J.).  OPM argued that FinCEN's dismissal mooted the plaintiff's challenge to those redactions.  The court disagreed and reached the plaintiff's claims against OPM anyway, implicitly holding that judicial review is available even if a defendant has redacted documents on behalf of

a non-party.  *Id.* at 23–24.  There is even more reason to exercise review in this case because, unlike the plaintiff in *Palmieri*, Bierly has actually appealed to FinCEN as he was instructed to do.

Second, although Bierly filed this action before FinCEN acted on his appeal, the plain text of the DoD's regulations apparently permits him to do so.  As just discussed, the regulations required Bierly to appeal to FinCEN within 60 days of DCSA's response, which he did.  The regulations further state that "[i]n order to seek a judicial review of a denial of a request for access to records, a requester must first file an appeal under this section," as Bierly has done.  32 C.F.R. § 310.6(c).  But nowhere does the regulation require Bierly to wait for an *adjudication* of his appeal before filing suit.[9]  Indeed, the regulations go on to advise that "[a]n appeal ordinarily will not be acted on if the request becomes a matter of litigation," which clearly contemplates that litigation may commence before the administrative appeal has been resolved.  *Id.* § 310.6(c).

Third, the defendants' reading of the statute rests on an overly narrow construal of the word "refuse."  By the time Bierly filed suit, his timely appeal to FinCEN had been festering for four months.  Neither the Privacy Act nor DoD's regulations impose a deadline to process an appeal of an adverse access-to-records request, but the Privacy Act *does* require an agency to respond to a records amendment appeal within 30 working days.  5 U.S.C. § 522a(d)(3).  And the Privacy Act's nearest analogue, FOIA, requires an agency to respond to an administrative appeal within 20 days. 5 U.S.C. § 522(a)(6)(A)(ii).  In light of these comparators, the Court has no trouble concluding that FinCEN's 4-month silence as to Bierly's appeal, with no end in sight, constituted a "refus[al] to comply" within the meaning of the Privacy Act.  The defendants cite two cases for the

---

[9] The regulation also provides: "The appellant will be notified of the decision on his or her appeal in writing.  If the decision affirms the adverse determination in whole or in part, the notification . . . will inform the appellant of the Privacy Act provisions for judicial review of the appellate authority's decision."  32 C.F.R. § 310.6(b).  But this language merely imposes a ministerial obligation on the agency to *inform* an appellant of their right to judicial review after an unfavorable adjudication of their administrative appeal.  It does not imply that the right to judicial review *depends* on there being an unfavorable adjudication first.

proposition that the Privacy Act requires an agency's express refusal as a prerequisite of judicial review, but both cases feature plaintiffs who never appealed an adverse determination, and are therefore not instructive as to a plaintiff like Bierly whose timely appeal has been ignored. *See Kvech*, 2011 WL 4369452, at *7–8 (plaintiff never received an initial adverse agency determination and thus never appealed); *Dickson*, 828 F.2d at 40 (Plaintiff received an adverse determination but "never sought higher administrative review").[10]

The Court need not decide exactly how much time must pass before an agency's non-response to a Privacy Act appeal constitutes a "refus[al] to comply" which, in turn, permits the plaintiff to seek judicial review. It suffices to say that Bierly's appeal accomplished all that the DoD's regulations required of him; that FinCEN failed to respond for many months; and that an agency cannot exempt itself from its Privacy Act obligations simply by promulgating regulations with no response deadlines and ignoring any appeals it may receive. Bierly has exhausted his Privacy Act administrative remedies as to Requests 4 and 5.[11] For the foregoing reasons, the Court must now consider the defendants' searches and withholdings in response to Requests 4 and 5 under both FOIA and the Privacy Act, as well as Request 6 under FOIA alone.

*(ii) The Defendants Conducted an Adequate Search in Response to Requests 4, 5, and 6*

An agency's search is adequate if it shows a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information

---

[10] *Kvech* is especially unilluminating: in that case the plaintiff "failed to respond to the FBI's exhaustion argument," which the Court therefore treated as conceded. *Kvech*, 2011 WL 4369452, at *8. Therefore, the *Kvetch* court never had to squarely consider the contours of administrative exhaustion under the Privacy Act.

[11] The Treasury Department and FinCEN have also promulgated rules which prescribe procedures for requesting records under the Privacy Act and appealing adverse determinations. *See* 31 C.F.R. § 1.27 (Treasury's general Privacy Act regulations); 31 C.F.R. § 1(C), App'x H (FinCEN-specific Privacy Act regulations). It is unclear from the record whether Bierly's appeal satisfied FinCEN's identity verification requirement. 31 C.F.R. § 1(C), App'x H(4). Because neither party raises the issue, the Court will give Bierly the benefit of the doubt.

requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d at 68. "Agency affidavits attesting to a reasonable search are afforded a presumption of good faith and can be rebutted only with evidence that the agency's search was not made in good faith." *Pinson v. U.S. Dep't of Just.*, 160 F. Supp. 3d 285, 293–94 (D.D.C. 2016) (internal quotations omitted).

Here, the Government has submitted a declaration from the Chief of the DCSA's Privacy, Civil Liberties, and Freedom of Information program, attesting to the search methodologies used to process Bierly's document requests. Watters Decl. ¶ 1. The Declaration identifies the databases that were searched in response to each of Bierly's requests. These include the Defense Information System (DISS), the "authoritative data system used to process and record personnel security clearance determinations," *id.* ¶¶ 8, 16; the Defense Index of Investigations (DCII) system, an "automated central index that identifies investigations conducted by DoD investigative agencies," *id.*; the Personnel Investigations Processing System (PIPS), which contains investigative files and inter- and intra-agency correspondences related to security clearance investigations, *id.* ¶¶ 13, 21; and the FBI's National Name Check Program (NNCP), *id.* ¶ 24. The Declaration further details how many records each system returned for each request. *Id.* ¶¶ 16, 21, 22. This declaration reflects the sort of "good faith effort . . . reasonably expected to produce the information requested" that FOIA requires an agency to undertake. *Oglesby*, 920 F.2d at 68.

Bierly only disputes the adequacy of the defendants' search as to Request 6—the request to which the DCSA failed to respond before the lawsuit began—arguing, in essence, that a search that takes place too late is necessarily inadequate. Pls.' Mot. for Summ. J. 21; Opp'n to Defs.' Mot. for Summ. J. 34–38. But the untimeliness of the DCSA's response matters little to the adequacy of its search now that the DCSA has, in fact, responded to Bierly's request. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314–15 (D.C. Cir. 2003) (rejecting the argument that a

search is inadequate solely "because the [defendant] initially delayed its search for documents"); *Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 42 (D.D.C. 2013) (collecting cases for the proposition that "untimely responses, in and of themselves, do not entitle [plaintiffs] to judgment in [their] favor"); *accord Poitras v. Dep't of Homeland Sec.*, No. 15-cv-1091-BAH, 2019 WL 1569561, at *9 (D.D.C. Apr. 11, 2019) ("[A]n agency's failure to respond to a FOIA request within the statutory timeline is not automatically unreasonable.").[12]   The Court concludes that DCSA's search as to each request was adequate.

### (iii) The Defendants Properly Claimed Statutory Exemptions Under FOIA and the Privacy Act

"Where a request for documents is made under both FOIA and the Privacy Act, the responding agency 'must demonstrate that the documents fall within some exemption under *each* Act.'" *Barouch v. U.S. Dep't of Just.*, 962 F. Supp. 2d 30, 66 (D.D.C. 2013) (quoting *Martin v. Off. of Special Couns., Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (emphasis in original)).   The defendants have met their burden to show that each withholding is justified by an exemption under the relevant statute or statutes.   The majority of the defendants' withholdings are uncontested, so the Court pauses to evaluate in detail only those that merit further discussion.

The DCSA redacted several documents which contained references to reports made and maintained by FinCen pursuant to the Bank Secrecy Act.   Watters Decl. ¶ 31.   The DCSA justified

---

[12] Bierly also argues that DCSA's failure to respond to his FOIA requests within the statutorily prescribed timeframe entitles him to summary judgment because it "reflect[s] a pattern of non-compliance and lack of diligence."  Pl.'s Mot. for Summ. J. 25–26; Opp'n to Defs.' Mot. for Summ. J. 37–38.  It is unclear whether this point is meant to impugn the adequacy of the defendants' search or if it is an entirely separate argument unto itself, but in either case it is without merit.  It is theoretically possible that a dilatory response could affect the Court's judgment as to whether, for example, the agency exercised good faith in making an adequate search.  However, in this case, the adequacy of the search is clear and largely uncontested.  Moreover, the fact that a FOIA response is delayed, even severely, does not by itself entitle a plaintiff to relief under FOIA.  *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform."); *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced the substance of the controversy disappears . . . .").

these redactions using FOIA Exemption 3, which protects records "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue . . . ." 5 U.S.C. § 522(b)(3). The Bank Secrecy Act "exempts records collected under that act from disclosure under FOIA." *Boyd v. Exec. Off. for U.S. Att'ys*, 87 F. Supp. 3d 58, 90 (D.D.C. 2015) (citing 31 U.S.C. § 5319; *see also Ortiz v. U.S. Dep't of Just.*, 67 F. Supp. 3d 109, 118–19 (D.D.C. 2014) (holding that BSA records redacted on FinCEN's behalf were properly withheld under Exemption 3). The defendants further argue that these records are protected by the Privacy Act's exemptions for records maintained by criminal law enforcement agencies, 5 U.S.C. § 522a(j)(2), and for "investigatory material compiled for law enforcement purposes," 5 U.S.C. § 522a(k)(2). Bierly does not contest that the defendants properly invoked these exemptions, so there is no genuine dispute that these records were properly withheld. *See Ortiz v. U.S. Dep't of Just.*, 67 F. Supp. 3d 109, 118–19 (D.D.C. 2014) (holding that BSA records redacted on FinCEN's behalf were properly withheld under this exemption).

The defendants also withheld or redacted several internal communications related to Bierly's security investigation under FOIA Exemption 5, which covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Th[is] exemption allows the government to withhold records from FOIA disclosure under at least three privileges: the deliberative-process privilege, the attorney-client privilege, and the attorney work-product privilege." *Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 249 (D.C. Cir. 2016). In this case, the defendants maintain that some of these documents fall within the deliberative process privilege because they contain "predecisional deliberative communications and advisory opinions" relating to Bierly's security clearance investigation,

whereas others are encompassed by attorney-client privilege because they comprise "advisory opinions obtained from the DCSA, Office of General Counsel." Watters Decl. ¶ 29. The defendants also argue that these documents are protected by the Privacy Act exemption for "information compiled in reasonable anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5).

Bierly only challenges the redaction of one such communication: an "OGC Referral Form" which, according to the defendants' *Vaughn* index, is protected by attorney-client privilege. *See Vaughn* Index, Watters Decl. Ex. E, ECF No. 24-5. This document's tracking number reveals that it was produced in response to either Request 1 or 2. *Id.* Bierly failed to exhaust administrative remedies under both FOIA and the Privacy Act as to these requests. Therefore, Bierly has no basis to object to this withholding.[13]

Third, the defendants withheld the names and contact information of DCSA's investigative and adjudicative staff pursuant to FOIA Exemption 6, which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The defendants claim that such personnel have a "significant interest in maintaining anonymity to avoid potential harassment . . . from individuals that may have been negatively impacted by a determination they made," and that the public would not benefit from knowing the identities of these individuals. Watters Decl. ¶ 26. The Court agrees:

---

[13] Even if Bierly had exhausted his administrative remedies as to these requests, the Court would have sided with the defendants, at least as to their claimed FOIA exemption. To assert this exemption, the agency must show that the withheld "communications were between a law office . . . and a client . . . ; that those communications were 'confidential;' and that they were either for the purpose of securing or disseminating legal advice." *Protect Democracy Project, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 370 F. Supp. 3d 159, 174 (D.D.C. 2019). The defendants' *Vaughn* index asserts that the document in question is an "[i]nteragency document containing confidential communications between general counsel and DCSA adjudicator related to legal matters for which they sought professional advice." *See Vaughn* Index. This description clearly identifies the law office ("general counsel") and the client ("DCSA adjudicator"), states that the communications between them were confidential, and avers that the purpose of the communications was to obtain professional legal advice.

disclosing the names of security clearance investigators would needlessly endanger them and the integrity of the security clearance process, and would not meaningfully "'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to,'" *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994) (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  Bierly does not address this exemption, leaving no genuine dispute that it was properly applied.[14]

Lastly, the defendants redacted the results of FBI "name check" searches under FOIA Exemption 7(E), which covers law enforcement records the production of which would disclose "techniques," "procedures," or "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  DCSA asks the FBI to run a "name check" on each security clearance applicant, which reveals whether the FBI has any investigative records on him.  Watters Decl. ¶ 24. The DCSA withholds the results of name checks, whether positive or negative, because a positive record could alert the individual that they are under investigation by the FBI, whereas a negative record could inform an offender that they have eluded the FBI's attention.  *Id.*  DCSA's explanation demonstrates that disclosure of name check results would create "the chance of a reasonably expected risk" of circumvention of the law, which is all that Exemption 7(E) requires.  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (holding that Exemption 7(E) "sets a relatively low bar for the agency to justify withholding").  Moreover, DCSA withholds name check records "[b]y agreement with the FBI,"

---

[14] The defendants do not identify a Privacy Act exemption that allows them to withhold the identities of DCSA's adjudicative personnel.  However, the tracking numbers associated with each document withheld pursuant FOIA Exemption 6 show that these records were produced in response either to Request 1, 2, or 6.  For each of these Requests, Bierly failed to exhaust his administrative remedies under the Privacy Act, so no exemption is necessary. *See Vaughn* Index; Watters Decl. ¶ 27.

Watters Decl. ¶ 24, an agency that "specializes in law enforcement" and whose decision to invoke Exemption 7(E) is therefore "entitled to deference.'" *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998). The defendants also claim the Privacy Act exemption for "investigatory material compiled for law enforcement purposes." 5 U.S.C. § 552a(k)(2). Bierly does not contest either exemption, leaving no genuine dispute that they were properly invoked.

*(iv) The Defendants Disclosed All Reasonably Segregable Information*

Having decided that the defendants conducted an adequate search for records and properly claimed exemptions under FOIA and the Privacy Act as to all documents withheld or redacted, the only remaining question is whether the defendants disclosed any "reasonably segregable non-exempt parts" of the records withheld or redacted. *Prop. of the People*, 330 F. Supp. 3d at 380. "'Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material,' which must be overcome by some 'quantum of evidence' from the FOIA requester." *Ctr. for Pub. Integrity v. U.S. Dep't of Com.*, 401 F. Supp. 3d 108, 116 (D.D.C. 2019) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). The defendants aver that DCSA conducted a "page-by-page and line-by-line" segregability review in response to each of Bierly's requests, Watters Decl. ¶ 42, and Bierly does not dispute the adequacy of the defendants' efforts to segregate non-exempt records. Therefore, there is no genuine dispute that DCSA satisfied FOIA's segregability requirement.

For all the foregoing reasons, the defendants are entitled to summary judgment on both Bierly's Privacy Act (Count VIII) and FOIA (Count IX) claims.

## IV.   CONCLUSION

Based on the reasons contained herein, the Court will **GRANT** the defendants' motion to dismiss Bierly's constitutional claims (Counts I–VI) and APA claim (Count VII). The Court will also **GRANT** the defendants' motion to dismiss the Air Force and NSA as party-defendants. The

Court will **DENY AS MOOT** the defendants' motion to dismiss Bierly's claims for compensatory damages.   And the Court will **GRANT** the defendants' motion for summary judgment as to Bierly's Privacy Act and FOIA claims (Counts VIII and IX, respectively).   A separate Order shall issue consistent with this Opinion.

Date: September ___18___, 2024

Royce C. Lamberth
United States District Judge